517 P.2d 1241

**The STATE of Arizona, Appellee,**

**v.**

**Maurice JAMISON, Appellant.**

**No. 2755.**

Supreme Court of Arizona,
In Banc.

Jan. 16, 1974.

Gary K. Nelson, Atty. Gen., Phoenix by John S. O'Dowd, Asst. Atty. Gen., and Jack L. Lansdale, Law Student, University of Arizona, Tucson, for appellee.

Schroeder, Soelter & Rosenthal, P. C. by Larry S. Rosenthal, Tucson, for appellant.

CAMERON, Vice Chief Justice.

This is an appeal from a verdict and judgment of guilt to the crime of aggravated assault while armed with a gun, § 13–245(A)[7] and (C) A.R.S.

We are called upon to answer the following questions on appeal:

1. Is aggravated assault as defined in § 13–245(A)[7] A.R.S., as amended, a crime of specific intent?

2. Was the defendant prejudiced by the rulings of the trial court which allowed the introduction of evidence concerning the degree of defendant's intoxication during the State's case-in-chief and then after the judge changed his mind, excluded such evidence during the defendant's case?

3. Did the trial court err in excluding Dr. Cutler's testimony concerning the effect of medication on the defendant's intoxication at the time of the alleged incident?

4. Was it reversible error for the trial court to exclude the testimony of a Colonel Ginn pertaining to a statement made to him by the defendant after the crime was committed?

The facts necessary for a determination of this matter on appeal are basically as follows. Prior to the alleged offense, defendant Jamison, after a 19 year marriage, was divorced from his wife. On the evening in question, he drove his ex-wife from work to their former domicile. An argument ensued at which time a shot was fired by the defendant from a small pistol which allegedly belonged to the wife. Defendant's two daughters left the house and proceeded across the street to the neighbors while he and his ex-wife continued with their argument. Defendant fired two shots aimlessly towards the kitchen area. Defendant's ex-wife and son then left the house and proceeded to a neighbor's house to call the police. The defendant left before the police arrived. After the police were gone, the defendant returned and the police were again summoned. The police officers were in uniform. Officer Tennyson testified as follows:

"Q Then what happened?

"A I again then asked the person inside to open the door because it was locked.

"Q What happened?

"A Several seconds later the doorknob turned and the door opened.

"Q Was there a screen inside the door?

"A There was a screen door on the outside of the—

"Q Outside of the door?

"A —outside of the door, yes, sir.

"Q Did you see someone standing there at that time?

"A Yes, sir.

"Q  Where in relation to the door and the screen?

"A  He was standing right up to the screen door.

\*    \*    \*    \*    \*    \*

"Q  (By Mr. Brogna) Did Mr. Jamison have anything in his hand at that time?

"A  Yes, he did.

"Q  What was that?

"A  It was a revolver.

"Q  And how did he have that revolver positioned, if you remember.

"A  He was holding it with his left hand and his right hand was also cupped around it and he was holding—may I demonstrate?

"Q  Yes.

"A  He was holding it like this to his chest.

"Q  Was it aimed any particular way that you could see?

"A  Yes. At me.

"Q  How far away were you standing?

"A  Approximately three, three and a half feet.

"Q  When you saw this, what did you do; when you saw Mr. Jamison standing there with a gun what did you do?

"A  I had my gun pointed at him, also.

"Q  When did you pull your gun?

"A  My gun was out upon approaching the front door.

"Q  Anything transpire at that point, what happened?

"A  I told the subject to drop the gun.

"Q  Did he do so?

"A  Not at this time, no.

"Q  What happened?

"A  He then stated for me to drop my gun or he would shoot me.

"Q  What did you do then?

"A  I then cocked my revolver and told him that he had two seconds to drop the gun or I would blow his head off.

"Q  Did he drop the gun right then?

"A  No. He hesitated, I don't know, maybe a split second, a second.

"Q  What did he do?

"A  He then threw the gun out, he pushed the screen door open and pushed the gun out."

An indictment was returned charging the defendant with Count I, aggravated assault upon a police officer while armed with a gun, § 13–245(A)[7], (C) A.R.S., and Count II, aggravated assault upon a police officer, § 13–245(A)[7] A.R.S., without mentioning the gun.

The two police officers testified on behalf of the State. Defendant's ex-wife and children testified on behalf of the defendant. The wife testified that the defendant had never acted that way before and the children indicated that the defendant was acting differently.

The jury returned a verdict of not guilty as to Count II, but guilty as to Count I. Defendant was given a five year suspended sentence and appeals from his conviction.

## IS AGGRAVATED ASSAULT A CRIME OF SPECIFIC INTENT?

Defendant first contends that the crime of aggravated assault is a crime that requires specific as opposed to general intent. The statute which the defendant was convicted of violating reads as follows:

"A.  An assault or battery is aggravated when committed under any of the following circumstances:

\*    \*    \*    \*    \*    \*

"7.  When the person committing the offense knows or has reason to know that the victim is a police officer, or a person summoned and directed by such officer while engaged in the execution of any official duties.

\*    \*    \*    \*    \*    \*

" \* \* \*  As amended Laws 1962, Ch. 88, § 1; Laws 1967, Ch. 62, § 1; Laws

1970, Ch. 58, § 1; Laws 1972, Ch. 179, § 1." § 13–245(A)[7], (C) A.R.S.

■ There are two types of intent in criminal law, general and specific. In crimes of general intent, the party is presumed to have the requisite criminal intent from the commission of the crime itself. Specific intent, however, is an additional mental element to certain crimes, and criminal statutes that use the words "wilfully" or "intentionally" will usually require a specified intent as, for example, assault with intent to commit murder which requires a specific intent on the part of the defendant to commit a murder, in addition to a general intent to commit an assault.

■ The difference between general and specific intent is important in a case like the one before the court because of the different burden placed on both the State and the defense. In general intent cases, once the commission of the crime has been shown, the absence of general intent may be shown by the defendant, but this is the defendant's burden and voluntary intoxication will not negate general intent.

On the other hand, in crimes of specific intent, this specific intent must be proved by the State and voluntary intoxication may be a defense:

"In cases involving specific intent it is error to refuse to permit the defendant to explain his intention in committing the act in question, or to testify as to his belief he had authority to so act. If, on the other hand, defendant relies on the absence of a general intent, such absence must be shown by him. Though voluntary drunkenness, as a general rule, is no excuse, yet where specific intent is an element of a crime, such evidence is admissible to show lack of such intent.

"Some criminal statutes provide punishment for those who 'wilfully' do certain proscribed acts. The word 'wilfully' means that there must be a specific intent or evil purpose, and is taken to mean 'deliberately and with a specific purpose to do the act proscribed.' It means an act done 'with a bad purpose,' or 'without justifiable excuse,' or 'stubbornly, obstinately, and perversely,' or 'without ground for believing it is lawful,' or 'marked by careless disregard whether or not one has the right so to act.' Specific meaning will depend partly on context. Mere omission with knowledge of the facts is not enough, nor is an act willful which is merely careless or negligent or inadvertent. Wilfulness must be proved beyond a reasonable doubt, but this can be done by circumstantial evidence." (footnotes omitted) Underhill, Criminal Evidence, Burden of Proof, § 55, p. 120.

■ General criminal intent is implied from the act itself while specific intent is not. In the instant case, we believe that the crime of assault of a police officer is a crime of general intent. See also United States v. Harvey, 428 F.2d 782 (9th Cir. 1970).

■ We believe that defendant confuses specific intent with specific knowledge. It is true that lack of knowledge may disprove the existence of specific intent:

"* * * Want of knowledge, it may be added, may disprove the existence of a specific intent. Thus one cannot intend to steal property which he believes to be his own however careless he may have been in coming to that belief." Perkins, Criminal Law, Responsibility: In General, Other Particular States of Mind, Ch. 7, p. 778.

But lack of specific intent is not the same thing as lack of specific knowledge. In the instant case, the State has shown the defendant had the requisite general intent together with the specific knowledge required by § 13–245(A)[7] A.R.S.

Defendant places strong reliance upon a recent Court of Appeals case, State v. Fimbres, 20 Ariz.App. 65, 510 P.2d 64 (1973), in which our Court of Appeals approved the finding by the trial court that the crime of obstructing a police officer in

the performance of his duties required a specific intent. The statute construed in Fimbres, supra, reads in part as follows:

"A. A person who * * * *wilfully* resists, delays or obstructs a public officer in the discharge or attempt to discharge any duty of his office, or who knowingly resists by the use of force or violence the officer in the performance of his duty * * *." § 13-541 A.R.S. (Emphasis added)

The Court of Appeals was correct in finding that the State had the burden of showing a specific intent on the part of the defendant because, unlike the statute in the instant case, the statute in Fimbres, supra, requires the specific intent to wilfully resist, delay or obstruct a public officer. Fimbres, supra, is distinguishable from the instant case.

The defendant also places reliance on a prior statement of this court:

"Defendant's second contention is that he was entitled to a directed verdict as a matter of law because the uncontradicted evidence showed that on the night in question he was so intoxicated that he was unable to form the specific intent necessary for the commission of an assault. The record shows that he had at least eight and possibly ten beers over a period of time prior to the incidents in front of his home. The officers testified that the defendant didn't appear drunk. The weight of this evidence was a matter for the jury and we cannot say the trial court errred in refusing to grant a directed verdict on this ground." State v. Duncan, 105 Ariz. 426, 428-429, 466 P.2d 380, 382-383 (1970).

While this statement is, at the most, merely dicta, we, by this opinion, disapprove said statement insofar as it indicates a holding by this court that the crime of aggravated assault of a police officer requires a specific as opposed to general intent.

## EVIDENCE OF DEFENDANT'S INTOXICATION

■ The court initially ruled that the defendant was entitled to the benefit of the specific intent interpretation of the statute and allowed the State to introduce certain evidence concerning defendant's intoxication. The court later changed its mind on this point and excluded offers of evidence on the question of voluntary intoxication.

The court also instructed the jury as follows:

"An assault is aggravated when the person committing the offense knows or has reason to know that the victim is a peace officer.

\*     \*     \*     \*     \*     \*

"To constitute a crime there must be a combination of an act forbidden by law and an intent to do the act. Intent may be inferred from the defendant's voluntary commission of an act forbidden by law and it is not necessary to establish that the defendant knew that his act was a violation of the law.

"No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition. But when the actual existence of any particular purpose, motive or intent is a necessary element to constitute any particular crime or degree of crime, you may take into consideration the fact that the accused was intoxicated at the time in determining the purpose, motive or intent with which he committed the act."

Our statute on the effect of intoxication reads as follows:

"No act committed by a person while in a state of voluntary intoxication is less criminal by reason of his having been in such condition, but when the actual existence of any particular purpose, motive or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time in determining the

purpose, motive or intent with which he committed the act." § 13–132 A.R.S.

The court was correct in the later ruling excluding evidence of intoxication. Considering the instruction regarding involuntary intoxication, it would appear that the defendant not only was not prejudiced by this action, but benefited from the admission of evidence in the State's case and an instruction he may not have been entitled to as a matter of right. We find no prejudice to the defendant in the court's ruling.

## TESTIMONY AS TO THE DEFENDANT'S HISTORY OF INTOXICATION

Defendant also attempted to introduce evidence by Dr. Davis Lloyd Cutler, an Air Force psychiatrist, concerning the defendant's history of intoxication and the effects of Librium which, the doctor stated, would make a person such as the defendant "profoundly more susceptible to the effects of alcohol."

For the reasons stated above, we find no error in excluding this evidence.

## COLONEL GINN'S TESTIMONY

Defendant made an offer of proof concerning a statement made by defendant to Col. Robert W. Ginn some four or five hours after the arrest of the defendant. The testimony was excluded. Defendant in his brief states as follows:

"At the trial, counsel for the Defense attempted to introduce the testimony of Colonel Ginn as to the degree of Defendant's intoxication on the evening in question. The testimony, according to Defendant's counsel's avowal, would have been to the effect that on the way home from jail with Col. Ginn, the Defendant told Col. Ginn that he did not know that he even had the gun in his hand at the time of the alleged assault. * * *"

The evidence that defendant attempted to elicit on redirect examination would have brought to the jury evidence

concerning lack of specific intent as a result of voluntary intoxication. Defendant may, of course, present evidence which would negate general intent, but we read our statute, § 13–132 A.R.S., to mean that voluntary intoxication may be used to negate specific intent only.

Judgment affirmed.

HAYS, C. J., and STRUCKMEYER, LOCKWOOD and HOLOHAN, JJ., concur.