258 P.3d 289

**STATE of Arizona ex rel. Thomas C. HORNE, Attorney General, Plaintiff/Appellant/Cross–Appellee,**

v.

**AUTOZONE, INC., a Nevada corporation, Defendant/Appellee/Cross–Appellant.**

**No. 1 CA–CV 09–0759.**

Court of Appeals of Arizona, Division 1, Department D.

Aug. 4, 2011.

474

Thomas C. Horne, Arizona Attorney General By Ann T. Uglietta, Assistant Attorney General and Carolyn R. Matthews, Assistant Attorney General, Phoenix, Attorneys for Plaintiff/Appellant/Cross–Appellee.

Renaud Cook Drury Mesaros, PA By William W. Drury, Jr., James L. Blair, N. Todd McKay, Kevin R. Myer and Ronald I. Rubin, and Paul G. Ulrich, P.C. By Paul G. Ulrich, and Melinda K. Cekander, Phoenix, Attorneys for Defendant/Appellee/Cross–Appellant.

Fennemore Craig, PC By Timothy Berg, and Alexander R. Arpad, Phoenix, Attorneys for Amicus Curiae Arizona Retailers Association.

## OPINION

NORRIS, Judge.

¶ 1 This appeal and cross-appeal arise out of claims for deceptive pricing practices asserted under the Arizona Consumer Fraud Act ("CFA") by appellant State of Arizona against appellee AutoZone. We hold: first, the CFA's prohibition against deceptive acts or practices neither imposes strict liability nor requires proof of an intent to deceive although it does require proof the retailer acted voluntarily; second, evidence a retailer committed a deceptive act or practice gives rise to a rebuttable presumption the retailer acted voluntarily; third, a retailer's failure to disclose information may constitute a deceptive act or practice if the retailer was under a legal duty to disclose the information; and fourth, to ensure compliance with and deter violations of the CFA, the CFA authorizes a court to order disgorgement.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 AutoZone is one of the nation's largest specialty retailers of automotive parts and accessories. In 2001, the Arizona Department of Weights and Measures ("DWM") began to inspect AutoZone's Arizona stores to verify its compliance with Arizona's retail pricing statute, Arizona Revised Statutes ("A.R.S.") section 41–2081 (2011)[1] ("Pricing Statute"). That statute, *inter alia*, prohibits a seller from misrepresenting the price, measure, or weight of a good offered for sale,[2] and requires a seller to display the price of a good on the good or at the point of display.[3] Over the next five years, the DWM

---

1. Although the Arizona Legislature amended certain statutes cited in this decision after the date AutoZone allegedly mispriced or did not price goods, the revisions are immaterial. Thus, we cite to the current versions of these statutes.

2. Subsection 41–2081(C) states: "A person shall not misrepresent the price of any commodity or service sold or offered, exposed or advertised for sale by weight, measure or count or represent the price in any manner calculated or tending to mislead or in any way deceive a person."

3. The Pricing Statute requires the price of a good to be on the good or posted "on the shelf or display at the point of display of the product." A.R.S. § 41–2081(L) (renumbered; subsection (K) in prior version).

fined AutoZone $170,000 for violating the Pricing Statute. AutoZone paid the fines without objection.

¶ 3 Relying on the inspection data collected by the DWM, in 2006, the State sued AutoZone under the CFA, A.R.S. § 44–1522 (Supp.2010). The CFA proscribes both deceptive acts or practices in the sale or advertisement of merchandise ("act clause"), as well as the concealment or omission of any material fact "with intent that others rely upon such" concealment or omission in the sale or advertisement of merchandise ("omission clause"). *Id.* In its complaint, the State alleged that from 2001 to July 2006 ("relevant period") AutoZone had violated the CFA by mispricing goods, meaning it offered for sale goods that displayed a price different than the price scanned at the register ("mispricing"). The State also alleged AutoZone had violated the CFA by not pricing goods, meaning it offered for sale goods not priced individually or at the point of display ("no pricing").

¶ 4 After the parties had conducted discovery, the State moved for partial summary judgment on liability, asserting the undisputed material facts demonstrated AutoZone had violated the CFA's act clause by offering to sell at least 806 mispriced goods and 2814 non-priced goods during the relevant period. In its motion papers, the State argued it was only required to prove "AutoZone [had] intended to display its merchandise for sale," characterizing the CFA's act clause as "essentially a strict liability statute."

¶ 5 In its response and cross-motion for summary judgment, AutoZone disagreed with the State's construction of the CFA. Relying on *State ex rel. Babbitt v. Goodyear Tire & Rubber Co.*, 128 Ariz. 483, 626 P.2d 1115 (App.1981), AutoZone argued the CFA's act clause incorporated an intent element requiring the State to produce evidence—which the State had failed to do—that it had "intended to put inaccurate prices on its shelves or product." AutoZone further argued its failure to price goods constituted an omission, not a deceptive act, thus requiring the State to produce evidence—which the State also had failed to do—that it had offered for sale the non-priced goods "with

intent that others rely" as required by the omission clause. AutoZone also separately moved for summary judgment, arguing, as relevant here, the State was not entitled to certain remedies under the CFA because, *inter alia,* it had already penalized AutoZone under the Pricing Statute for the same pricing practices. *See infra* ¶¶ 36–38.

¶ 6 Finding disputed fact issues, the superior court denied the parties' motions ("first ruling"). In so doing, it rejected the State's strict liability argument, ruling the act clause required the State to prove AutoZone had intended to "post[ ] a price that is inaccurate and potentially misleading." The court also rejected the State's argument the act clause, and not the omission clause, applied to AutoZone's no pricing. The court made additional rulings which we discuss in more detail below. *See infra* Part III.

¶ 7 After additional discovery, AutoZone and the State again cross-moved for summary judgment on liability. As they had before, the parties disputed whether the act clause required any showing of intent. Without addressing all of the arguments raised by the parties, a different division of the superior court, relying on the first ruling, entered summary judgment in AutoZone's favor "by necessity" to allow the parties' disagreement over intent to be resolved on appeal. Accordingly, it dismissed the State's claims and denied its cross-motion for summary judgment. The State's appeal and AutoZone's cross-appeal followed.

## DISCUSSION

### I. The Act Clause

■ ¶ 8 The State argues the superior court should not have granted summary judgment to AutoZone because the act clause "creates a statutory claim for consumer fraud that requires no proof of intent to deceive, intent to do the act, or any other form of intent." As we understand the State's argument, the act clause imposes strict liability, and therefore it was only required to show AutoZone "made, used or employed misrepresentations, deception, or deceptive acts or practices[ ] in connection with the sale or

advertisement of any merchandise."[4] Accordingly, the State argues we should abandon *Goodyear* insofar as it requires a showing of intent. We disagree. As we explain, the act clause requires a form of intent.

### A. Intent

¶ 9 Whether the CFA's act clause imposes strict liability, as the State argues, presents an issue of law we review de novo. *State v. Hansen*, 215 Ariz. 287, 289, ¶ 6, 160 P.3d 166, 168 (2007). When we construe a statute, "we apply 'fundamental principles of statutory construction, the cornerstone of which is the rule that the best and most reliable index of a statute's meaning is its language and, when the language is clear and unequivocal, it is determinative of the statute's construction.'" *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, 296, ¶ 8, 152 P.3d 490, 493 (2007) (quoting *Janson ex rel. Janson v. Christensen*, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991)).

¶ 10 The relevant portion of the CFA is as follows:

> The act, use or employment by any person of any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

A.R.S. § 44–1522(A). As discussed, this subsection proscribes two distinct unlawful practices in connection with the sale or advertisement of merchandise: first, under the act clause, "any deception, deceptive act or practice, fraud, false pretense, false promise, misrepresentation," and second, under the omission clause, any "concealment, suppression or

omission." *Id.* Although the omission clause contains an express intent element—an "intent that others rely upon such concealment, suppression or omission"—the act clause does not. *Id.*

¶ 11 Rather, the act clause describes conduct, specifically "[t]he act, use or employment . . . of any deception, deceptive act or practice . . . in connection with the sale or advertisement of any merchandise." *Id.* Although this language does not incorporate an intent requirement, such as willfully, knowingly, or intentionally, the described conduct refers to activities that by their very nature require voluntary conduct in the sense of action that is undertaken freely. *See Trustmark Ins. Co. v. Bank One, Ariz., NA*, 202 Ariz. 535, 541, ¶ 27, 48 P.3d 485, 491 (App. 2002) (courts give statutory words their ordinary meaning unless specifically defined or context clearly indicates special meaning is intended). In other words, the act clause requires a person voluntarily do the act he or she performed.[5] That the act clause requires this minimal intent is underscored by the CFA's definitions of "sale" and "advertisement": a sale is "any sale, offer for sale, or attempt to sell any merchandise for any consideration," A.R.S. § 44–1521(7) (2003), and an advertisement "includes the attempt by publication, dissemination, solicitation or circulation, oral or written, to induce directly or indirectly any person to enter into any obligation or acquire any title or interest in any merchandise." A.R.S. § 44–1521(1).

¶ 12 We essentially described this minimal level of intent in *Goodyear*. 128 Ariz. at 486, 626 P.2d at 1118. In that case, the State alleged a tire manufacturer had violated the CFA by advertising tire prices without disclosing that federal excise taxes would be added to the price of the tires or explaining the meaning of "ply rating." *Id.* at 484–85, 626 P.2d at 1116–17. The manufacturer es-

---

4. As we discuss in Part II.B., in cross-moving for summary judgment, the State argued AutoZone's no pricing was not simply an omission but constituted a deceptive practice under the act clause, and thus it was not required to demonstrate the omission clause's intent requirement—the intent that others rely upon the omission. *See* A.R.S. § 44-1522(A).

5. For simplicity, we discuss intent under the act clause in the context of affirmative acts. We recognize a person can voluntarily fail to do an act. We point this out because a person can commit a deceptive act under the act clause through an omission if that person was under a duty to disclose. *See infra* ¶¶ 29–30.

sentially argued, first, its advertisements were not deceptive as a matter of law, and second, the CFA required the State to show "an intent to deceive." *Id.* at 485–86, 626 P.2d at 1117–18. Although we agreed with the first argument, we disagreed with the second argument. We explained the CFA's act clause only required a showing of "an intent to do the act involved," and, in that case, submission of the allegedly deceptive advertisements was sufficient to make that showing.

> In light of the purpose of the [CFA], which is to protect the public from deceptive acts, we hold that the only showing of intent required by A.R.S. § 44–1522 is an intent to do *the act involved.* It is not necessary to show a specific intent to deceive.

*Id.* at 486, 626 P.2d at 1118 (emphasis added) (footnote omitted). Relying on *Goodyear,* other Arizona courts also have recognized the act clause does not require proof of an intent to deceive. *Alaface v. Nat'l Inv. Co.,* 181 Ariz. 586, 591, 892 P.2d 1375, 1380 (App. 1994); *State ex rel. Corbin v. Tolleson,* 160 Ariz. 385, 398, 773 P.2d 490, 503 (App.1989).

¶ 13 As Amicus Arizona Retailers Association notes, although the "*Goodyear* court did not cite the source of its 'intent to do the act involved' standard," that standard is analogous to the criminal law concept of "general intent."[6] General intent crimes only require proof the actor intended to do the act performed. *State v. Greenawalt,* 128 Ariz. 388, 394, 626 P.2d 118, 124 (1981).[7]

¶ 14 As Amicus also notes, "intent to do the act involved" is not a very high standard. Indeed, Arizona courts recognized that in "crimes of general intent, the party is presumed to have the requisite criminal intent from the commission of the crime itself." *State v. Jamison,* 110 Ariz. 245, 248, 517 P.2d 1241, 1244 (1974), *overruled on other grounds by State v. Mikels,* 118 Ariz. 495, 578 P.2d

174 (1978); *see State v. Bell,* 113 Ariz. 279, 281, 551 P.2d 548, 550 (1976); *State v. Brown,* 204 Ariz. 405, 409, ¶ 18, 64 P.3d 847, 851 (App.2003). By recognizing the State had made a prima facie showing "of the intent to do the act" by demonstrating the manufacturer had placed the advertisements, *Goodyear* adopted a similar approach to intent. The court stated:

> In the context of advertising, once it has been shown that the act complained of is encompassed by A.R.S. § 44–1522, a prima facie showing of the intent to do the act is made by the placing of the advertisement. Thus, in the present case, the required showing has been made by the submission of the advertisements in question, although … the summary judgment fails because the intended acts were not shown to be acts within the language of A.R.S. § 44–1522.

128 Ariz. at 486, 626 P.2d at 1118. Accordingly, we reject the State's argument we should abandon *Goodyear*'s intent standard and impose strict liability.

¶ 15 We recognize that, as the State points out, the CFA "is designed to root out and eliminate 'unlawful practices' in merchant-consumer transactions," *People ex rel. Babbitt v. Green Acres Trust,* 127 Ariz. 160, 164, 618 P.2d 1086, 1090 (App.1980), *superseded by statute on other grounds,* 1981 Ariz. Sess. Laws, ch. 295, § 5, *as recognized in State ex rel. Corbin v. Pickrell,* 136 Ariz. 589, 667 P.2d 1304 (1983), and the CFA's cause of action for consumer fraud is considerably different from a common-law fraud claim. *Haisch v. Allstate Ins. Co.,* 197 Ariz. 606, 610, ¶ 14, 5 P.3d 940, 944 (App.2000) (common-law fraud elements); *Cearley v. Wieser,* 151 Ariz. 293, 295, 727 P.2d 346, 348 (App. 1986) (CFA broader in scope than common-law fraud); *Peery v. Hansen,* 120 Ariz. 266, 269, 585 P.2d 574, 577 (App.1978) (violation of

---

**6.** In its response to the Amicus Brief, the State agreed "there are similarities between the two concepts" of "general intent" and "intent to do the act."

**7.** When the Arizona Legislature enacted the new criminal code in 1977, it jettisoned the use of specific and general intent and instead adopted four culpable mental states: intentionally, knowingly, recklessly, and with criminal negligence.

*State v. Robles,* 128 Ariz. 89, 90, 623 P.2d 1245, 1246 (App.1980); *see State v. Ramos,* 133 Ariz. 12, 14, 648 P.2d 127, 129 (App.1981) (Hathaway, J., dissenting), *rev'd,* 133 Ariz. 4, 648 P.2d 119 (1982); *see also* 1977 Ariz. Sess. Laws, ch. 142, § 39 (1st Reg. Sess.). Although "general intent" is no longer part of our criminal code, the concept still has analogical value.

CFA "more easily shown" than common-law fraud). We also recognize the legislature included specific intent requirements in other provisions of the CFA—for example, the "intent that others rely" requirement in the omission clause and the requirement in the civil penalties provision, A.R.S. § 44–1531(A) (2003), that a person "wilfully violate[ ] § 44–1522"—and did not do so explicitly in the act clause. But the remedial purpose of the CFA and the intent requirements incorporated in other provisions of the CFA cannot, in our view, transform the statutory provision into one of strict liability.

¶ 16 Further, although the legislature may enact strict liability statutes, *State v. Slayton*, 214 Ariz. 511, 514, ¶ 10, 154 P.3d 1057, 1060 (App.2007), liability under such statutes is strict, and thus such statutes are disfavored, *State v. Young*, 192 Ariz. 303, 311, ¶ 30, 965 P.2d 37, 45 (App.1998) (quoting *Liparota v. United States*, 471 U.S. 419, 426, 105 S.Ct. 2084, 2088, 85 L.Ed.2d 434 (1985)), and we will construe statutes as imposing strict liability only if "there appears to be a clear legislative intent not to require any particular mental state." *Slayton*, 214 Ariz. at 514, ¶ 12, 154 P.3d at 1060. We have found no authority, and the State has cited none, suggesting the legislature intended to impose strict liability under the act clause.

¶ 17 Moreover, in the context of criminal law, strict liability is considered appropriate for regulatory offenses that "carry relatively small penalties, and do not seriously damage the reputation of those convicted of them." *Id.* at 516, ¶ 20, 154 P.3d at 1062. Although not a criminal statute, liability under the CFA can result in significant reputational harm and financial penalties, such as restitution and disgorgement, *see infra* ¶¶ 39–43, without requiring any proof of a separate mental state. A.R.S. § 44–1528 (2003) (authorizing orders "as may be necessary" to prevent use of an unlawful practice or to restore money or property to injured persons).

¶ 18 Finally, *Goodyear*'s "intent to do the act involved" formulation and its recognition this intent can be presumed from the actor's commission of the act has applied to CFA-act-clause claims for 30 years. This court has relied on *Goodyear*'s construction of the CFA's act clause when construing the CFA and even similar statutes. *Alaface*, 181 Ariz. at 591, 892 P.2d at 1380 (CFA); *Tolleson*, 160 Ariz. at 398, 773 P.2d at 503 (CFA); *see Siler v. Ariz. Dep't of Real Estate*, 193 Ariz. 374, 380, ¶ 26, 972 P.2d 1010, 1016 (App.1998) (citing *Goodyear*'s intent standard when construing A.R.S. § 32–2181 (1992), which prohibits acting in concert to avoid the requirement that the subdivider give detailed notice of its intent to offer subdivided lands for sale or lease); *see also Flagstaff Med. Ctr., Inc. v. Sullivan*, 773 F.Supp. 1325, 1361–62 (D.Ariz. 1991) (CFA), *rev'd in part on other grounds*, 962 F.2d 879 (9th Cir.1992). Additionally, other courts have relied on *Goodyear* in applying state consumer fraud statutes. *Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 778 & n. 9 (8th Cir.2010) (construing Arkansas Deceptive Trade Practices Act); *Winton v. Johnson & Dix Fuel Corp.*, 147 Vt. 236, 515 A.2d 371, 376 (1986). During this time, our legislature has amended the CFA but has not modified the act clause to respond to *Goodyear*'s construction of that provision. Accordingly, we presume the legislature approved of *Goodyear*'s construction of the act clause. *Galloway v. Vanderpool*, 205 Ariz. 252, 256, ¶ 17, 69 P.3d 23, 27 (2003) ("If the legislature amends a statute after it has been judicially construed, but does not modify the statute in a manner that changes the court's interpretation, we presume the legislature approved of the court's construction and intended that it remain a part of the statute.").

¶ 19 Given this history and the importance of stare decisis to the predictability of the law, especially when prior precedent involves the interpretation of a statute, *id.*, we reaffirm the formulation of intent we first described in *Goodyear*. Under that formulation, the State was required to show AutoZone voluntarily intended to do the acts performed, that is, voluntarily offered mispriced or non-priced goods for sale.

### B. AutoZone's Entitlement to Summary Judgment [8]

¶ 20 Although we reject the State's strict liability argument, we nevertheless

---

**8.** Summary judgment is appropriate when "there is no genuine issue as to any material fact" and

agree with the State that AutoZone was not entitled to summary judgment. In our view, the superior court misapplied *Goodyear*'s "intent to do the act involved" formulation.

■ ¶ 21 The superior court ruled that, under the act clause, the State was required to prove AutoZone had intended to post a price that was inaccurate and potentially misleading. AutoZone stands firmly behind the superior court ruling, arguing on appeal the act clause required the State to prove that on the dates of the DWM inspections, AutoZone had intentionally posted a price different from the price at the register (or intended to post no price). Under *Goodyear*, however, the State was not required to make such a showing. Instead, it merely needed to make a prima facie showing AutoZone had committed the "act[s] involved," that is, offered mispriced and non-priced goods for sale. Prima facie evidence is not evidence at all but rather is a presumption of law that, in the absence of evidence to the contrary, allows the trier of fact to presume the existence of a fact based on proof of other facts. *Universal Underwriters Ins. Co. v. State Auto. & Cas. Underwriters*, 108 Ariz. 113, 115, 493 P.2d 495, 497 (1972) (citing cases). In most cases, the presumption created by prima facie "evidence" affects the burden of producing evidence and vanishes when the opposing party introduces evidence contradicting the presumption. *See id.*

■ ¶ 22 Applying this principle here, we agree with the State that when it demonstrates an actor has committed an act subject to the act clause and thus has made a prima facie showing of the actor's intent, the actor then bears the burden of producing sufficient evidence he or she acted without such intent. If the actor does this, intent must be determined as if the presumption of intent had never existed in the case, even if the fact-finder might ultimately disbelieve the actor's evidence. *See generally Golonka v. Gen. Motors Corp.*, 204 Ariz. 575, 589, ¶ 48, 65 P.3d 956, 970 (App.2003).[9]

¶ 23 In sum, the State presented evidence AutoZone had offered mispriced and non-priced goods for sale, and by doing so, made a prima facie showing AutoZone had committed those acts with the requisite intent. *Cf. Kelly v. NationsBanc Mortg. Corp.*, 199 Ariz. 284, 287, ¶ 14, 17 P.3d 790, 793 (App.2000) ("When the party moving for summary judgment makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the opposing party to produce sufficient competent evidence to show that an issue exists."). The burden then shifted to AutoZone to rebut the State's prima facie showing that it had acted with the requisite intent. On this record, therefore, AutoZone was not entitled to summary judgment. Consequently, we vacate summary judgment in AutoZone's favor and remand for further proceedings consistent with this opinion.

## II. The State's Cross–Motion for Summary Judgment

■ ¶ 24 The State argues the superior court should have granted its cross-motion for summary judgment on liability[10] because, first, it was not required to prove intent under the act clause, and second, AutoZone's mispricing and no pricing (which the State argued was a deceptive practice, not just an omission) were undisputed and constituted,

"the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(c). Summary judgment should be granted "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). We determine de novo whether any genuine issues of material fact exist and whether the superior court properly applied the law. *Eller Media Co. v. City of Tucson*, 198 Ariz. 127, 130, ¶ 4, 7 P.3d 136, 139 (App.2000).

9. The State has not argued the presumption recognized in *Goodyear* should shift the burden of persuasion. *See Golonka*, 204 Ariz. at 589–90, ¶ 49, 65 P.3d at 970–71.

10. Although denial of summary judgment is generally not appealable, *Aaron v. Fromkin*, 196 Ariz. 224, 227, ¶ 10, 994 P.2d 1039, 1042 (App. 2000), certain arguments raised by the State in its summary judgment motion present or incorporate issues of law likely to recur on remand. *See Lowe v. Pima Cnty.*, 217 Ariz. 642, 649, ¶ 30, 177 P.3d 1214, 1221 (App.2008). Thus, we resolve them now.

as a matter of law, deceptive acts or practices entitling it to summary judgment.[11] Although, as discussed, the State presented evidence AutoZone offered mispriced and non-priced goods for sale, and thus made a prima facie showing AutoZone intended to do these acts, it nevertheless was not entitled to summary judgment because AutoZone was not given an opportunity to rebut the State's prima facie showing of intent.

### A. Mispricing under the Act Clause

¶ 25 A person is not liable under the act clause unless, first, the person employs or uses a "deception, deceptive act or practice, fraud, false pretense, [or] misrepresentation" in offering or advertising goods for sale. A.R.S. § 44–1522(A); *Goodyear*, 128 Ariz. at 485–86, 626 P.2d at 1117–18. Arizona courts have interpreted the term "deceptive" to include "representations that have a 'tendency and capacity' to convey misleading impressions to consumers even though interpretations that would not be misleading also are possible." *Madsen v. W. Am. Mortg. Co.*, 143 Ariz. 614, 618, 694 P.2d 1228, 1232 (App.1985) (citations omitted). This standard looks to "whether the least sophisticated reader would be misled" in light of the CFA's remedial purpose of "eliminat[ing] unlawful practices in merchant-consumer transactions." *Id.* Displaying one price on the shelf and charging another price for the good at the register undoubtedly has the capacity to convey a misleading impression to consumers[12] as to the actual price of the merchandise. Indeed, AutoZone does not dispute that offering mispriced goods for sale would be deceptive or have a " 'tendency and capacity' to convey misleading impressions to consumers." *Id.* Therefore, on this

record, we agree with the State that AutoZone's mispricings were deceptive as a matter of law.

¶ 26 But that is not the end of the analysis. A person is not liable under the act clause unless the person intended to do the deceptive act. A.R.S. § 44–1522(A); *Goodyear*, 128 Ariz. at 486, 626 P.2d at 1118. As we have discussed, the State made a prima facie showing AutoZone performed this deceptive act with the requisite intent by showing AutoZone had in fact offered for sale mispriced goods.[13] *See supra* ¶¶ 14, 21–23. AutoZone was thus entitled to an opportunity to rebut the State's prima facie showing. But, because the superior court misapplied *Goodyear*, AutoZone did not receive this opportunity. *See supra* ¶¶ 21–23. Accordingly, on this record, the State was not entitled to summary judgment on its mispricing claim, and we decline the State's request that we direct entry of summary judgment in its favor.

### B. No Pricing—Deceptive Act/Practice or Omission

¶ 27 The State also argues, as it did in the superior court, AutoZone's offering for sale goods without prices should be considered a deceptive practice as a matter of law. The superior court, agreeing with AutoZone, rejected this argument and found the omission clause, not the act clause, applied to the State's no-pricing claim. We disagree.

¶ 28 First, we must consider whether AutoZone's no pricing constitutes an omission under the omission clause or a "deceptive act or practice" under the act clause. On its face, there is a difference between acts and omissions. Generally, "[t]he word 'act' . . . .

**11.** No genuine issue of material fact exists as to the threshold inquiry under the CFA—whether AutoZone was acting "in connection with the sale or advertisement of any merchandise." A.R.S. § 44–1522(A). AutoZone admitted it "sold, sells, offered for sale, offers for sale, attempted to sell, sells, and/or attempts to sell, 'merchandise' during the relevant period."

**12.** Contrary to AutoZone's argument, we note the State need not produce evidence actual consumers were misled by this practice to prove the practice was deceptive. Neither the term "deceptive" nor the CFA requires evidence that a

person "has in fact been misled, deceived or damaged thereby" for the court to find an unlawful practice. A.R.S. § 44–1522(A); *Madsen*, 143 Ariz. at 618, 694 P.2d at 1232.

**13.** AutoZone's managers and its pricing-standards expert testified the DWM inspectors accurately reported the prices posted. Further, the superior court found it "undisputed that the State's inspections reveal that AutoZone has posted a significant number of shelf prices that did not comport with the price[s] reflected in the database."

'denotes the affirmative. Omission denotes the negative. Act is the expression of will, purpose. Omission is inaction. Act carries the idea of performance. Omission carries the idea of refraining from action.'" *Terry v. Lincscott Hotel Corp.*, 126 Ariz. 548, 553, 617 P.2d 56, 61 (App.1980) (quoting *Randle v. Birmingham Ry., Light & Power Co.*, 169 Ala. 314, 53 So. 918, 921 (1910)). At common law, courts imposed "liab[ility] without any great regard" for fault when a person injured another by an affirmative act, but they were not "greatly concerned with one who merely did nothing" because they were reluctant to punish silence or non-actions as the person "has at least made his situation no worse." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 56, at 373 (5th ed. 1984).

■ ¶ 29 The distinction between what constitutes an act and what constitutes an omission, however, has not always been clear. *See Chattin v. Cape May Greene, Inc.*, 124 N.J. 520, 591 A.2d 943, 946–47 (1991) (Stein, J., concurring). Indeed, "[a] misrepresentation and an omission share the same baneful feature: a capacity to mislead the customer.... The only logical basis for the Legislature's different treatment of the two must lie in its perception of different levels of culpability." *Id.* Accordingly, under the common law, courts often recognized that a party's omission, that is, a party's failure to disclose information, could constitute an affirmative deception when the party had a duty to disclose that information. *See Haisch v. Allstate Ins. Co.*, 197 Ariz. 606, 610, ¶ 14, 5 P.3d 940, 944 (App.2000) (common-law fraud claim typically requires an affirmative misrepresentation, but when a defendant has "a legal or equitable obligation to reveal material information," failure to do so is "equivalent to" a fraudulent misrepresentation); *see also Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pen-*

*sion Trust Fund,* 201 Ariz. 474, 496 n.22, ¶ 88, 38 P.3d 12, 34 n.22 (2002)[14] (citing Restatement (Second) of Torts § 551 (1977)); *S Dev. Co. v. Pima Capital Mgmt. Co.*, 201 Ariz. 10, 14–16, ¶¶ 7–10, 31 P.3d 123, 127–29 (App.2001); *Hill v. Jones*, 151 Ariz. 81, 84–85, 725 P.2d 1115, 1118–19 (App.1986); *Frazier v. Sw. Sav. & Loan Ass'n*, 134 Ariz. 12, 17–18, 653 P.2d 362, 367–68 (App.1982). Thus, when a party has a duty to disclose certain information, the failure to do so constitutes an affirmative deception because it has failed to disclose information it was obligated to disclose.

■ ¶ 30 The language of the CFA reflects the common law's reluctance to impose liability for mere omissions because it imposes an intent-to-rely requirement in the omission clause. *See supra* ¶ 10. Thus, as a general matter, we agree with AutoZone the State cannot avoid the heightened intent requirement imposed by the omission clause by characterizing an omission as a deception. But, when the law imposes a duty to disclose certain information, the failure to disclose the information can constitute an affirmative deception under the act clause.[15] *See Haisch*, 197 Ariz. at 610, ¶ 14, 5 P.3d at 944.

¶ 31 In the context of their own state consumer fraud statutes, other courts have recognized a party has committed a deceptive act if it failed to disclose information it was under a duty to disclose. For example, in *Fenwick v. Kay American Jeep, Inc.*, the State of New Jersey sued two car dealers and an advertiser for failing to disclose a "bona fide odometer reading" in their car advertisements, in violation of a regulation requiring such disclosure, which was promulgated under the state's consumer fraud act, which includes N.J. Stat. 56:8–2, a statute virtually identical to our CFA. 72 N.J. 372, 371 A.2d 13, 14 (1977). The New Jersey Supreme Court held the State was not re-

14. In *Wells Fargo*, the court also explained that another form of fraud was concealment. 201 Ariz. at 496 n.22, 38 P.3d at 34 n.22. Here, however, the State has not accused AutoZone of violating the CFA by concealment.

15. AutoZone cites *Totz v. Continental Du Page Acura*, 236 Ill.App.3d 891, 177 Ill.Dec. 202, 602 N.E.2d 1374, 1381–82 (1992), to support its ar-

gument nondisclosure of information is an omission under a state consumer fraud statute similar to the CFA, even if the actor is under a duty to disclose the information. AutoZone misreads that case. The court did not discuss whether an omission could constitute a deceptive act based on a duty to disclose.

quired to show any intent to sustain the charges under the consumer fraud act because the failure to disclose the odometer readings "was more than the mere omission of a material fact." *Id.* at 16. Indeed, "such disclosure was specifically required by the administrative regulation as a preventive measure against deception or an unconscionable commercial practice" and the failure to disclose it constituted a deception. *Id.; see Binette v. Dyer Library Ass'n,* 688 A.2d 898, 906–07 (Me.1996) (failure to comply with disclosure statute constitutes evidence of a deceptive act, not an omission); *cf. Hinchliffe v. Am. Motors Corp.,* 184 Conn. 607, 440 A.2d 810, 813 (1981) (plaintiffs did not show defendants engaged in deceptive trade practice because record was devoid of evidence they "affirmatively misrepresented or had a duty to disclose [that certain car parts were not manufactured by American Motors]").

¶ 32 Here, contrary to the requirements of the Pricing Statute, AutoZone failed to post prices on goods or at their point of display. *See supra* ¶ 2. Thus, we agree with the State that AutoZone's no pricing constituted something "more than the mere omission of a material fact," *Fenwick,* 371 A.2d at 16, and amounted to a deceptive act, subject to the act clause.

¶ 33 On this record, AutoZone's no pricing was deceptive as a matter of law. Offering goods for sale without a price has a "tendency and capacity," *Madsen,* 143 Ariz. at 618, 694 P.2d at 1232, to convey misleading impressions to consumers because, for example, they may incorrectly assume another good's price applies to the good with no price. Ultimately, when a store offers goods for sale without a posted price, consumers cannot know the actual price of the good until they are at the register and thus they will be unable to compare prices while shopping.

¶ 34 But, as with the mispricing claim, the State was not entitled to summary judgment. Although, as explained, the State made a prima facie showing of AutoZone's intent by presenting evidence, through the DWM inspection reports, AutoZone had offered non-priced goods for sale, AutoZone was entitled to an opportunity to rebut the State's prima facie showing of intent.

### III. AutoZone's Cross–Appeal

¶ 35 In its cross-appeal, AutoZone argues that if we remand for further proceedings the State should not be entitled to seek, first, "duplicative civil penalties" or, second, disgorgement. The superior court explicitly rejected the first argument, ruling the CFA permits cumulative remedies and noting it had "the discretion to fashion any monetary award so as to avoid a duplicative recovery." The superior court rejected the second argument as well, although implicitly, by finding a question of fact existed as to whether the State was entitled to disgorgement of profits. Because we are remanding this matter to the superior court and AutoZone's arguments regarding available remedies under the CFA will likely arise on remand, we address them now. *See Lowe v. Pima Cnty.,* 217 Ariz. 642, 649, ¶ 30, 177 P.3d 1214, 1221 (App.2008). As we explain, we agree with the rulings made by the superior court.

### A. Duplicative Civil Penalties

¶ 36 AutoZone argues the State cannot obtain civil penalties under the CFA because the State has already assessed civil penalties against it for violating the Pricing Statute and imposing such penalties under the CFA would punish the same conduct and would be duplicative. Accordingly, it asserts we should interpret the CFA's cumulative remedies provision as prohibiting duplicative civil penalties for the same conduct. *See* A.R.S. § 44–1533(A) (2003) ("The provisions of this article are in addition to all other causes of action, remedies and penalties available to this state."). As we recognized in *State ex rel. Corbin v. Pickrell,* this provision provides "an additional avenue of relief," allowing the State to seek remedies under more than one statute. 136 Ariz. 589, 592, 667 P.2d 1304, 1307 (1983). Alternatively, AutoZone argues that if the statute permits duplicative civil penalties for the same conduct, the statute is unconstitutional because it violates AutoZone's rights to due process and to be protected from excessive fines. Although these issues present questions of law subject to our de novo review, we need

not decide them because the record demonstrates the State is not seeking civil penalties for the same conduct.

¶ 37 A CFA civil penalty provision permits the State to impose civil penalties for wilful violations of the CFA:

> If a court finds that any person has *wilfully* violated § 44–1522, the attorney general upon petition to the court may recover from the person on behalf of the state a civil penalty of not more than ten thousand dollars per violation.

A.R.S. § 44–1531(A) (2003) (emphasis added). A "wilful violation occurs when the party committing the violation knew or should have known that his conduct was of the nature prohibited by § 44–1522." A.R.S. § 44–1531(B). Unlike the civil penalties provision of the CFA, which requires a court to find a wilful violation, AutoZone and Amicus argue, and the State does not dispute, the State is entitled to assess civil penalties under the Pricing Statute without any showing of intent or mental state. *See* A.R.S. § 41–2115(A) (2011). Thus, the statutes do not authorize penalties for the same conduct.[16] Accordingly, the State is not attempting to penalize AutoZone for the same conduct, as AutoZone argues.

¶ 38 Further, based on our review of the record, the State appears to have argued (1) each Pricing Statute violation constituted a deceptive act or misrepresentation and (2) the aggregate of the violations constituted a deceptive practice based on AutoZone's pattern of conduct during the relevant period. Insofar as the State is seeking penalties for individual Pricing Statute violations, the conduct may be different because the DWM did not impose administrative penalties for every violation.[17] Accordingly, the State has not penalized AutoZone for all of the mispricings and no pricings identified in the DWM inspection data. And, insofar as the State is seeking penalties for AutoZone's aggregate or pattern of violations, that conduct is different than the conduct the DWM penalized after its inspections—a "practice" is a habitual action and something more than an accumulation of a number of individual instances of conduct.[18] Thus, contrary to AutoZone's argument, the State is not seeking to recover twice for the "same conduct."[19]

## B.  Disgorgement

■ ¶ 39 AutoZone next argues the State is not entitled to pursue disgorgement under A.R.S. § 44–1528(A)(1).[20] We disagree; A.R.S. § 44–1528(A)(1) is worded expansively, and, as worded, allows a court to order disgorgement.[21] *See Deer Valley Unified*

---

**16.** AutoZone argues the State conceded in the superior court it was seeking to punish AutoZone for the same conduct. We disagree. The State acknowledged the underlying acts were the same, but it explained the conduct was "defined differently." We agree with the State.

**17.** The DWM does not seek civil penalties for every failed inspection. A DWM regulation provides the "initial inspection of a retail location for price verification is for educational purposes and an enforcement action will not be imposed for a violation identified during the initial inspection." Ariz. Admin. Code R20–2–104(I)(1).

**18.** "Practice" is generally defined as "[t]he habitual doing or carrying on of something; usual, customary, or constant action" or "[a] habitual way or mode of acting; a habit, custom; ... something done constantly or usually; a habitual action." 12 The Oxford English Dictionary 271 (J.A. Simpson & E.S.C. Weiner eds., 2d ed. 1989); *see In re Pinal Cnty. Mental Health No. MH–201000029*, 225 Ariz. 500, 504 n.4, ¶ 15, 240 P.3d 1262, 1266 n.4 (App.2010) ("In the absence of a statutory definition, a dictionary may be consulted to determine the ordinary meaning of words used in a statute.").

**19.** Even if the conduct overlaps, the superior court can fashion the remedy to avoid a duplicative recovery, as the court and the State have acknowledged. *See Harris v. Manor Healthcare Corp.*, 111 Ill.2d 350, 95 Ill.Dec. 510, 489 N.E.2d 1374, 1381 (1986).

**20.** AutoZone also argues the State is not entitled to recover restitution under A.R.S. § 44–1528(A)(2). We do not need to decide this issue because the record reflects the State abandoned its claim for restitution.

**21.** Initially, the State requested disgorgement of AutoZone's profits from its unlawful practices. As the case progressed, however, the State explained it was seeking disgorgement of "overcharge monies" based on § 44–1528(A)(1) and the court's inherent equitable powers. AutoZone simply attacks the availability of disgorgement generally. At this juncture, we do not need to resolve whether any potential disgorgement would be of profits or overcharge monies.

*Sch. Dist. No. 97 v. Houser,* 214 Ariz. 293, 296, ¶ 8, 152 P.3d 490, 493 (2007) (to construe statute, look first to its language); *see also supra* ¶ 9.

¶ 40 Although the statute does not specifically mention disgorgement, it grants the court broad discretion to prevent unlawful practices: "The court may make such orders or judgments as may be necessary to: 1. Prevent the use or employment by a person of any unlawful practices." A.R.S. § 44–1528(A). Disgorgement is a classic remedy to effectuate this result, consistent with the purpose of the CFA.[22] *See State ex rel. Goddard v. Gravano,* 210 Ariz. 101, 105, ¶ 14, 108 P.3d 251, 255 (App.2005) ("disgorgement is designed in part to ensure that defendants do not profit from illegal acts"); *see also Porter v. Warner Holding Co.,* 328 U.S. 395, 400, 66 S.Ct. 1086, 1090, 90 L.Ed. 1332 (1946) ("[I]t is not unreasonable for a court to conclude that [a disgorgement] order is appropriate and necessary to enforce compliance with the [Emergency Price Control] Act and to give effect to its purposes. Future compliance may be more definitely assured if one is compelled to restore one's illegal gains. . . ."); *Sec. & Exch. Comm'n v. Cavanagh,* 445 F.3d 105, 117 (2d Cir.2006) (disgorgement has been used "to prevent wrongdoers from unjustly enriching themselves through violations, which has the effect of deterring subsequent fraud"); *Sec. & Exch. Comm'n v. Fischbach Corp.,* 133 F.3d 170, 175 (2d Cir. 1997) ("primary purpose of disgorgement orders is to deter violations of the securities laws by depriving violators of their ill-gotten gains"); *Commodity Futures Trading Comm'n v. Co Petro Mktg. Grp.,* 680 F.2d 573, 584 (9th Cir.1982) ("it would frustrate the regulatory purposes of the [Commodity Exchange] Act to allow a violator to retain his ill-gotten gains").

¶ 41 As a traditional equitable remedy to prevent unlawful conduct, other courts have allowed disgorgement when construing statutes that contained broad language similar to that contained in A.R.S. § 44–1528(A)(1). *See Commodity Futures Trading Comm'n,* 680 F.2d at 583 ("such action as is necessary to remove the danger of violation" is broad

enough to authorize an appointment of a receiver, order an accounting, and require disgorgement of unlawfully obtained funds for violation of Commodity Exchange Act (quoting 7 U.S.C. § 13a–1 (1976))); *In re Jensen,* 395 B.R. 472, 485 (Bankr.D.Colo. 2008) (Colorado Consumer Protection Act does not specifically mention disgorgement to a governmental entity, but grants courts "considerable discretion in entering orders and judgment 'as may be necessary to prevent the use or employment by such person of any such deceptive trade practice . . . or to prevent any unjust enrichment by any person through the use or employment of any deceptive trade practice' " (quoting Colo.Rev. Stat. § 6–1–110(1) (2002))); *cf. Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal.4th 1134, 131 Cal.Rptr.2d 29, 63 P.3d 937, 945–46 (2003) (language in unfair competition law, "as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition," broad enough to authorize restitutionary disgorgement).

¶ 42 Furthermore, many courts have viewed disgorgement as a form of injunctive relief when the statute imposes no limitations on a court's equitable powers. *See, e.g., Pierce v. Amaral,* 938 F.2d 94, 95–96 (8th Cir.1991) ("By authorizing the Secretary [of Housing and Urban Development] to seek an injunction, section 1714(a) allows the Secretary to invoke the district court's equitable jurisdiction [and thus order disgorgement]."); *Sec. & Exch. Comm'n v. Clark,* 915 F.2d 439, 453 (9th Cir.1990) ("The SEC's power to obtain injunctive relief [under the Securities Exchange Act] has been broadly read to include disgorgement of profits realized from violations of the securities laws."); *cf. Owner–Operator Indep. Drivers Ass'n v. Swift Transp. Co.,* 632 F.3d 1111, 1121 (9th Cir.2011) (federal trucking law listed "only injunctive relief to the exclusion of other equitable remedies"; court not authorized to order disgorgement). Here, ordering disgorgement would be consistent with A.R.S. § 44–1528(A), which authorizes the State to "seek and obtain in an action in the superior court an injunction prohibiting such person

---

**22.** See discussion of purpose *supra* ¶¶ 15, 25.

from continuing such [unlawful] practices," because the expansive language directly following that sentence—"court may make such orders or judgments as may be necessary"—does not limit relief to injunctions. Thus, ordering disgorgement falls within the court's broad grant of authority under A.R.S. § 44–1528(A).

¶ 43 Therefore, based on these authorities and given the language of the statute, we hold A.R.S. § 44–1528(A) permits a court to order disgorgement to "[p]revent the use or employment by a person of any unlawful practices." We express no opinion, however, on whether the court should order disgorgement in this case and precisely what AutoZone may be required to disgorge because such determinations require further factual development and legal analysis.

*IV. Attorneys' Fees*

¶ 44 The State requests its attorneys' fees and costs on appeal pursuant to A.R.S. § 44–1534 (2003). That statute authorizes the court to grant the attorney general costs, including reasonable attorneys' fees, for actions brought under the CFA. We award the State its reasonable attorneys' fees and costs on appeal contingent upon its compliance with Arizona Rule of Civil Appellate Procedure 21.

¶ 45 AutoZone requests its reasonable attorneys' fees and costs on cross-appeal pursuant to A.R.S. § 12–348 (2003). Because AutoZone did not prevail in its cross-appeal, it is not entitled to an award under this statute. Thus, we deny AutoZone's fee request on cross-appeal.

**CONCLUSION**

¶ 46 For the foregoing reasons, we vacate summary judgment in favor of AutoZone, decline to direct entry of summary judgment in the State's favor on liability, and remand for further proceedings consistent with this opinion.

CONCURRING: PATRICIA A. OROZCO, Judge.

GEMMILL, Judge, concurring in part and dissenting in part.

¶ 47 I concur with my colleagues on the issues addressed in the majority opinion with the exception of the majority's conclusion that the remedy of disgorgement is available to the State under the CFA.

¶ 48 Before addressing disgorgement, I will summarize my understanding of the intent requirement under the CFA that the State must prove on the part of AutoZone. The CFA neither imposes strict liability nor requires proof of traditional intent to deceive. Relying primarily on the language of the CFA and on our *Goodyear* opinion, we have concluded that the requisite intent is the intent "to do the act involved." A retailer such as AutoZone should not be liable under the CFA for involuntary, unintended mispricings or missing prices. *See supra* ¶¶ 10–19. We have also determined that the very doing of the acts involved allows a presumption of the requisite intent, *see supra* ¶¶ 21–22, and therefore the State carries its initial burden by proving the mispricings or missing prices. On remand, AutoZone will have the opportunity to offer admissible evidence concerning its lack of intent.

¶ 49 The majority concludes that disgorgement is available to the State as a remedy under the CFA. *See supra* ¶¶ 39–43. I respectfully dissent from this conclusion. The CFA is a comprehensive set of statutes setting forth in detail a variety of remedies and penalties for violations of its provisions, yet these statutes do not describe or specifically authorize disgorgement. When the legislature has created a complete statutory scheme that does not include a particular remedy that could have easily been included, we should be very reluctant to create such a remedy by judicial interpretation. *See Ballesteros v. Am. Standard Ins. Co. of Wis.*, 226 Ariz. 345, 349, ¶ 17, 248 P.3d 193, 197 (2011) ("[I]t is not our place to rewrite the statute."); *New Sun Bus. Park, LLC v. Yuma Cnty.*, 221 Ariz. 43, 47, ¶ 16, 209 P.3d 179, 183 (App.2009) (same); *Rotolo v. San Jose Sports and Entm't, LLC*, 151 Cal. App.4th 307, 59 Cal.Rptr.3d 770, 782 (2007) (stating that courts "have no power to rewrite a statute by implying additional provi-

sions we believe would further legislative purpose" and "[t]his rule of judicial restraint is particularly appropriate where the statutes, as here, are detailed and comprehensive").

¶ 50 Under the provisions of the CFA, the court may impose injunctive relief against companies or individuals to prevent specific conduct and may even prohibit persons from engaging altogether in a specified trade or occupation. A.R.S. § 44–1528(A)(1), (3). The court may also order restitution of money or property to the victims. A.R.S. § 44–1528(A)(2). The court may appoint a receiver to take control of the assets of an offending company or person. A.R.S. § 44–1528(A)(2) and (B). The attorney general is authorized to accept an "assurance of discontinuance" of unlawful practices from violators. A.R.S. § 44–1530 (2003). Various civil penalties are created. *See* A.R.S. § 44–1531, –1532 (2003). But nowhere in this statutory scheme is the attorney general specifically given power to seek a disgorgement remedy nor is the court authorized to order disgorgement.

¶ 51 The legislature has acted to create a variety of remedies and penalties for violations of the CFA. Now the State wants to add a disgorgement remedy that is not part of the statutory scheme. This new remedy differs from the statutory restitutionary remedy because the funds recovered will apparently go to the State, not any actual victims. Yet the legislature has already provided for specific civil penalties without any mention of disgorgement. *See id.* Furthermore, as AutoZone points out, the CFA contains no provision for the handling and use of any funds that might be recovered via this new remedy. *See* A.R.S. § 44–1531.01(B) (Supp.2010) (directing that "investigative or court costs, attorney fees or civil penalties recovered for the state by the attorney general" from enforcing consumer fraud act be placed in the consumer protection-consumer fraud revolving fund).

¶ 52 Faced with this detailed statutory scheme enacted by the legislature regarding consumer fraud, I would leave to the legislature the creation of a new remedy such as disgorgement. We should not in essence rewrite these statutes by judicial interpretation. *See Ballesteros,* 226 Ariz. at 349, ¶ 17, 248 P.3d at 197; *New Sun,* 221 Ariz. at 47, ¶ 16, 209 P.3d at 183; *Rotolo,* 59 Cal.Rptr.3d at 782.

¶ 53 For these reasons, I respectfully dissent from the majority's conclusion that the remedy of disgorgement is available to the State under the CFA.