154 P.3d 1057

**The STATE of Arizona, Petitioner,**

v.

**The Honorable Dan SLAYTON, Judge of the Superior Court of the State of Arizona, in and for the County of Coconino, Respondent Judge,**

**Richard Remmert, Real Party in Interest.**

**No. 1 CA–SA 06–0208.**

Court of Appeals of Arizona, Division 1, Department A.

March 29, 2007.

Terence C. Hance, Coconino County Attorney By Ted S. Reed, Deputy County Attorney and Aaron Hall, Deputy County Attorney, Flagstaff, Attorneys, for Petitioner.

Aspey, Watkins & Diesel, P.L.L.C. By Bruce S. Griffen and David Thorn, Flagstaff, Attorneys for Real Party in Interest.

## OPINION

SNOW, Judge.

¶ 1 In this special action, the State of Arizona challenges the Coconino County Superior Court's decision on appeal to vacate the misdemeanor convictions of Richard Remmert, the real party in interest. The superior court vacated the convictions after determining, contrary to the ruling of the Flagstaff Justice Court, that Arizona Revised Statutes ("A.R.S.") sections 17–309(A)(1) and—309(A)(17)(2006) were not strict liability offenses and required a culpable mental state on the part of the perpetrator. By separate order, we previously accepted jurisdiction and vacated the superior court's ruling, stating that a written decision explaining our reasoning would follow. We now explain why we have determined that the provisions at issue are strict liability offenses.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 In 2004, Remmert applied for an Arizona hunting permit through United States Outfitters ("USO"). After USO received a permit for Remmert for a limited opportunity hunt in portions of hunting Units 6A, 19A, and 21, USO realized that it had erred in processing the application and that Remmert would not be able to get a trophy bull elk in

those limited areas. USO refunded Remmert's deposit, but at Remmert's request, mailed him the permit. Remmert subsequently contacted Ty Goodman, a professional guide and outfitter, saying he had a permit for Unit 6A and traveled to Arizona for the hunt. Goodman, not realizing that the permit was valid for only a portion of Unit 6A, hunted that unit with Remmert. Remmert shot a bull elk several miles outside of the portion of the unit covered by his permit.

¶ 3 The next morning, an Arizona Game and Fish Department official confronted Remmert, and Goodman admitted that they had made a mistake. Goodman was not prosecuted, but Remmert was charged pursuant to A.R.S. § 17–309(A)(1), which provides that "it is unlawful to ... [v]iolate ... any rule adopted pursuant to [Title 17]." The rule Remmert was charged with violating, Arizona Administrative Code R12–4–302(G), prohibits hunting outside the authorized unit. Remmert was also charged with possession of unlawfully taken big game in violation of A.R.S. § 17–309(A)(17) providing that "it is unlawful to ... [p]ossess or transport any wildlife[1] or parts of the wildlife which was unlawfully taken."

¶ 4 Prior to trial, the Flagstaff Justice Court, pursuant to a motion *in limine* filed by the State, determined that the offenses were strict liability crimes that did not require proof of a culpable mental state. Remmert was convicted on both counts and subsequently filed an appeal in the superior court.

¶ 5 On appeal, the superior court reversed, holding that "the statute contained an element of mens rea" and thus, the misdemeanors were not strict liability offenses. Although the superior court made no finding as to what actual mental state was required, it vacated Remmert's conviction and remanded the case to the justice court for an entry of dismissal. The State subsequently filed this petition for special action.

## JURISDICTION

¶ 6 Although our special action jurisdiction is discretionary, we choose to exercise it in this case because it presents an issue of statewide importance, *Ugalde v. Burke*, 204 Ariz. 455, 457, ¶ 5, 65 P.3d 103, 105 (App. 2003), and presents circumstances in which the State has no equally plain, speedy, or adequate remedy on appeal. *See* A.R.S. § 22–375(A) (2002) (providing that "[a]n appeal may [only] be taken ... from a final judgment of the superior court in an action appealed from a justice of the peace or police court, if the action involves the validity of a tax, impost, assessment, toll, municipal fine or statute"). Here, because the State does not question the validity of § 17–309(A), but rather the superior court's interpretation of it, a special action provides the only means to seek relief. *Guthrie v. Jones*, 202 Ariz. 273, 274, ¶ 3, 43 P.3d 601, 602 (App.2002). We review the superior court's interpretation of §§ 17–309(A)(1) and—309(A)(17), de novo. *See Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996)(holding that the interpretation of a statute is a question of law).

## ANALYSIS

¶ 7 This matter turns on the construction and application of A.R.S. 17–309(A)(1) and—309(A)(17)[2], which provide in pertinent part:

A. Unless otherwise prescribed by this title, it is unlawful for a person to:

1. Violate any provision of this title or any rule adopted pursuant to this title.

 . . .

17. Possess or transport any wildlife or parts of the wildlife which was unlawfully taken.

¶ 8 In its petition the State asserts that §§ 17–309(A)(1) and—309(A)(17) are of the narrow class of crimes that are strict liability offenses, for which the commission of the crime does not require as an element that the perpetrator have a specific mental state.

---

1. Section 17–101(A)(22) (2006) defines wildlife as "all wild mammals, wild birds and the nests or eggs thereof, reptiles, amphibians, mollusks, crustaceans, and fish, including their eggs or spawn."

2. Section 17–309(A) enumerates twenty-two "unlawful" acts relating to the taking and handling of wildlife.

The State asserts, therefore, that the superior court erred when it ruled otherwise.

¶ 9 At common law, crimes were defined to require both guilty conduct and a culpable mental state whether it be intent, knowledge, recklessness, or negligence. *See Morissette v. United States*, 342 U.S. 246, 251, 72 S.Ct. 240, 96 L.Ed. 288 (1952)(stating that common law crimes "generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand").

¶ 10 More recently, however, statutes were enacted defining criminal acts, and courts concluded that common law crimes, when codified, continued to require intent or guilty knowledge, even if the statutes were silent on the matter. *Id.* at 252, 72 S.Ct. 240. In contrast, statutory crimes, if properly enacted within the police power, are often upheld without proof of an evil intent, and even without any mental element at all. *Id.* at 280, 72 S.Ct. 240. Such crimes involving "particular industries, trades, or products that affect public health, safety, or welfare, such as maintaining pure food and drugs, labeling, weights and measures, building codes, sanitation, and highway safety" are considered public welfare or regulatory offenses. *State v. Young*, 192 Ariz. 303, 311 n. 7, 965 P.2d 37, 45 n. 7 (App.1998). *See, e.g., United States v. Holloway*, 744 F.2d 527, 530–31 (6th Cir.1984) (holding the offense of possession of heroin required no showing of mens rea); *State v. Manzo*, 144 P.3d 551, 559 (Colo.2006) (holding that a statute prohibiting leaving the scene of an accident was a strict liability crime); *State v. Mertens*, 148 Wash.2d 820, 64 P.3d 633, 637 (2003) (providing that fishing without a license was a strict liability regulatory offense); *State v. Ariz. Mines Supply Co.*, 107 Ariz. 199, 207, 484 P.2d 619, 627 (1971)(finding that conviction for air pollution did not require a showing of intent); *Troutner v. State*, 17 Ariz. 506, 507, 154 P. 1048, 1048 (1916) (holding a defendant who sold alcoholic beverage did not need to know that the beverage was alcoholic to be criminally liable for its sale). Many of the public welfare offenses "are not in the nature of positive aggressions or invasions, with which the common law so often dealt, but are in the nature of neglect where the law requires care, or inaction where it imposes a duty." *Morissette*, 342 U.S. at 255, 72 S.Ct. 240.

¶ 11 In Arizona, it is well settled that the legislature may enact laws imposing criminal liability regardless of whether the perpetrator had any particular mental state. *See State v. Lycett*, 133 Ariz. 185, 192, 650 P.2d 487, 494 (App.1982) (providing the state has wide latitude to enact strict liability statutes that protect public health, safety, and welfare); *Ariz. Mines Supply Co.*, 107 Ariz. at 207, 484 P.2d at 627 (holding the legislature may make the doing of an act or the neglect to do something a crime without requiring criminal intent).

¶ 12 The legislature has specified that in determining whether a criminal statute requires the existence of a particular mental state:

> [i]f a statute defining an offense does not expressly prescribe a culpable mental state that is sufficient for commission of the offense, no culpable mental state is required for the commission of such offense, and the offense is one of strict liability unless the proscribed conduct necessarily involves a culpable mental state.

A.R.S. § 13–202(B) (2001). Strict liability offenses, however, will be found only when there appears to be a clear legislative intent not to require any particular mental state for the commission of the crime. *Spitz v. Municipal Court of City of Phoenix*, 127 Ariz. 405, 407, 621 P.2d 911, 913 (1980). When a statute fails to specify a mental state, but the proscribed conduct impliedly requires one, the appropriate mental state may be implied. *State v. Berry*, 101 Ariz. 310, 313, 419 P.2d 337, 340 (1966).

¶ 13 In order to resolve whether the offenses charged require a particular mental state, we must ascertain the legislature's intent in enacting them. *See State v. Cutshaw*, 7 Ariz.App. 210, 221, 437 P.2d 962, 973 (1968) (stating "whether a statute condemns conduct, regardless of intent, is initially a problem of ascertaining the legislative intent"). To do so we look first to the plain language of the statute, then to its context and history. *State v. Bridgeforth*, 156 Ariz. 60, 62–63, 750

P.2d 3, 5–6 (1988). *See In re Paul M.*, 198 Ariz. 122, 124, ¶ 4, 7 P.3d 131, 133 (App.2000) (Legislative intent often can be discovered by examining the development of a particular statute.) (quoting *Carrow Co. v. Lusby*, 167 Ariz. 18, 20, 804 P.2d 747, 749 (1990)). We then examine whether the type of crime is one for which strict liability has been historically imposed. *See Morissette*, 342 U.S. at 256, 72 S.Ct. 240 (holding that although strict liability criminal offenses are disfavored, they are appropriate for regulatory offenses).

### A. Language

■ ¶ 14 Sections 17–309(A)(1) and—309(A)(17) do not by their plain language require that the offender have any particular mental state to violate them. Section 17–309(A)(1) merely specifies that it is "unlawful for a person to ... [v]iolate ... any rule adopted pursuant to this title." Here, A.A.C. R12–4–302(G), which was adopted pursuant to Title 17 of the Arizona Revised Statutes, prohibits hunting in the wrong area providing that "[a]n individual shall use a tag [permit] only in the season and hunt area for which the tag [permit] is valid." Thus, pursuant to the plain terms of § 17–309(A)(1), to establish a violation of this particular rule, the State must show merely that the alleged offender was hunting either out of season or outside the designated hunting area. There is nothing in the conduct proscribed by the statute, or the rule, that "necessarily involves a culpable mental state" by requiring that the hunter know that he is hunting out of his designated hunting area.

¶ 15 Similarly, § 17–309(A)(17) merely specifies that it is unlawful for a person to "[p]ossess or transport any wildlife or parts of the wildlife which was unlawfully taken." Pursuant to this subsection, the State must establish that a defendant possessed or transported wildlife and that the wildlife possessed or transported was unlawfully taken.

Even assuming, without deciding, that a defendant must know that the defendant is possessing or transporting wildlife to be guilty of the offense, there is no requirement in the language of § 17–309(A)(17) specifying that the offender have any particular mental state with respect to whether the wildlife was unlawfully taken. Thus, there is nothing in the conduct proscribed by the statute that "necessarily involves a culpable mental state" with respect to whether the wildlife was unlawfully taken.

### B. Statutory History

¶ 16 As a whole, § 17–309 regulates hunting and fishing within Arizona. When examining the development of the statute, it is clear the legislature intentionally added a required mental state for certain offenses, while specifically omitting any such requirement for others. Furthermore, a legislative scheme emerges in which the legislature has provided lesser penalties for those who commit an offense that requires no particular mental state but more severe penalties if the perpetrator engages in similar conduct with knowledge.

¶ 17 The predecessor to § 17–309(A), A.R.S. § 17–315 (1955), was originally enacted by the legislature in 1929. *See* 1929 Ariz. Sess. Laws, ch. 84, § 46. Until 1978, with the exception of two offenses, it required no specific mental state.[3] In 1978, however, the legislature amended § 17–309 adding a requirement that an offender act "knowingly" as to what are now §§ 17–309(C),—309(D), and—309(E) and replacing the element of "willfully" with "knowingly" in § 17–309(A)(5).[4] The legislature, however, added no mental state requirement to the remaining subsections under § 17–309(A). Additionally, all offenses under § 17–309, which were previously class one misdemeanors, were re-classified as class two misdemeanors.

---

**3.** The first offense that included a mental state was if one "willfully or without cause or reason destroy[ed], injur[ed], or molest[ed] any livestock, growing crops, or other improvements." 1929 Ariz. Sess. Laws, ch. 84, § 46. The legislature, however, removed the mental state requirement as to this offense in 1958. A.R.S. § 17–309(A)(3)(1958). The second offense was if one took any wildlife and "willfully [left] ... any

edible portion ... to go to waste." 1929 Ariz. Sess. Laws, ch. 84, § 46.

**4.** Section 17–309(A)(5) requires that the offender act knowingly, providing that "it is unlawful for a person to ... take a game bird, game mammal or game fish and knowingly permit an edible portion therefore to go to waste."

¶ 18 In 1979, the legislature further amended § 17–309(A), adding twelve offenses, including subsection (A)(17), which made the possession or transport of any wildlife that was unlawfully taken a class two misdemeanor, and subsection (A)(11), which made it a class two misdemeanor to "[t]ake wildlife during the closed season." None of the added offenses under subsection (A), however, included a required mental state. Conversely, the legislature amended subsection (C), making it a class one misdemeanor to *"knowingly* take any big game during a closed season." (Emphasis added.) In doing so, not only did the legislature again opt to require a particular mental state in one subsection and not another, it specifically designated the same offense to be treated more harshly if it was committed knowingly. For example, shooting a deer during the closed season is a class two misdemeanor under § 17–309(A)(11), but doing so knowingly is a class one misdemeanor under § 17–309(C). Thus, the history of statutory development as well as the plain language demonstrate an intentionally graduated level of punishment as between those who violate certain prohibitions and those who violate those same prohibitions knowingly. *Cf. Spitz,* 127 Ariz. at 407, 621 P.2d at 913 (finding that under a statute providing that if a liquor retailer had reason to question the age of a purchaser, certain procedures had to be followed and, if those procedures were not followed, lack of knowledge was not a defense to a charge of selling liquor to a minor, but if the procedures were followed, lack of knowledge was a defense).

¶ 19 The legislature has repeatedly amended 17–309, expressly adding a required mental element to 17–309(C),—309(D), and—309(E), yet each time it has done so, it has added no such element to offenses within 17–309(A).[5] Because we presume that the legislature understood what it was doing when it enacted these statutes, *State v. Garza Rodriguez,* 164 Ariz. 107, 111, 791 P.2d 633, 637

(1990) ("We presume that the legislature knows the existing laws when it enacts or modifies a statute."), we conclude the statutory history clearly reflects a legislative intent not to require the existence of any culpable mental state within 17–309(A), except when the text plainly requires.

## C. Regulatory Nature of the Crime

 ¶ 20 Although strict liability criminal offenses are disfavored, they are appropriate for regulatory offenses that result in no direct or immediate injury to person or property, carry relatively small penalties, and do not seriously damage the reputation of those convicted of them. *See Morissette,* 342 U.S. at 256, 72 S.Ct. 240. Furthermore, they are suited to situations when "[t]he accused, if he does not will the violation, usually is in a position to prevent it with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities." *Id.*

¶ 21 Here, it is not unreasonable for the State to hold an applicant for a hunting permit responsible for violating its terms, even if the hunter claims ignorance. A hunter is responsible for learning the laws and regulations pertaining to the hunting privilege and abiding by them. The hunter's ignorance of the conditions placed on the privilege may not serve as an excuse because the hunter "is in a position to prevent [this ignorance] with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities." *Id.*

¶ 22 As well it is not unreasonable to impose upon a person possessing game animals modest criminal liability if those animals have been unlawfully taken. The animals subject to regulation under this subsection are not common household pets, rather they are statutorily defined as wild animals. *See*

---

**5.** The Arizona Criminal Code contains four culpable mental states: intentionally, knowingly, recklessly, and negligently. A.R.S. 13–105(9) (Supp.2006); *Bridgeforth,* 156 Ariz. at 62–63, 750 P.2d at 5–7. Here, however, nothing in the language, context, or statutory history of A.R.S. 17–309(A)(1) and—309(A)(17) implicates any of

these, and we decline to read such language into the statute. *See Roubos v. Miller,* 213 Ariz. 36, 38, ¶ 5, 138 P.3d 735, 737 (App.2006) (The primary rule of statutory construction is to find and give effect to legislative intent.) (quoting *Mail Boxes, Etc., U.S.A. v. Indus. Comm'n,* 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995)).

A.R.S. § 17–101(A)(22) (defining wildlife as "all wild mammals, wild birds and the nests or eggs thereof, reptiles, amphibians, mollusks, crustaceans, and fish, including their eggs or spawn"); A.R.S. § 17–101(B)(3) (defining big game as "wild turkey, deer, elk, pronghorn (antelope), bighorn sheep, bison (buffalo), peccary (javelina), bear and mountain lion"). Thus, it is not unreasonable for the State to hold those who come into possession of such animals, or parts thereof, responsible for their origin.

¶ 23 Furthermore, offenses involving activities like hunting and fishing are generally accepted as falling into the category of regulatory crimes. *See United States v. Morgan,* 311 F.3d 611, 613 (5th Cir.2002) (stating that the offense of possessing migratory game birds exceeding the daily bag limit was regulatory in nature); *United States v. Corrow,* 119 F.3d 796, 806 (10th Cir.1997) (holding that a statute prohibiting the possession of protected eagle feathers was a regulatory act); *Mertens,* 64 P.3d at 637 (holding that fishing without a license is a regulatory offense).

¶ 24 Finally, as a general rule the commission of a strict liability crime results in a relatively minor penalty. *State v. Seyrafi,* 201 Ariz. 147, 155, 32 P.3d 430, 438 (App. 2001) ("Although statutorily created criminal offenses with no mental element 'have a generally disfavored status,' . . . strict liability may be appropriate to certain types of offenses in which the 'penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation.' ") (quoting *Morissette,* 342 U.S. at 256, 72 S.Ct. 240). In Arizona, a class two misdemeanor is punishable by up to four months in jail and a $750 fine. This is well within the range of penalties held appropriate for other strict liability crimes. *See Spitz,* 127 Ariz. at 407–08, 621 P.2d at 913–14 (holding that a crime punishable by a $300 fine and six months in jail qualified as a strict liability offense); *see also Morgan,* 311 F.3d at 615–16 (holding that a crime punishable by up to six months imprisonment and a $15,000 fine was a strict liability offense); *United States v. Erne,* 576 F.2d 212, 215 (9th Cir.1978) (stating that a penalty of one year imprisonment and a $5000 fine was an appropriate punishment for a strict liability crime).

¶ 25 Remmert argues that if these provisions are held to be strict liability offenses innocent-minded individuals may be convicted of violating the statute. As the Supreme Court noted in *United States v. Dotterweich,* however,

> [i]n such matters the good sense of prosecutors, the wise guidance of trial judges, and the ultimate judgment of juries must be trusted. Our system of criminal justice necessarily depends on conscience and circumspection in prosecuting officers, even when the consequences are far more drastic than they are under the provision of law before us.

320 U.S. 277, 285, 64 S.Ct. 134, 88 L.Ed. 48 (1943) (citation omitted). *See Holloway,* 744 F.2d at 531–32 (holding that although classifying possession of heroin as a strict liability crime could lead to innocent persons violating the statute, the good sense of prosecutors, judges, and juries must be trusted).

¶ 26 Therefore, considering the language, statutory history, and context of the statute as a whole, we conclude the legislature has specified requisite mental states where it wanted them and clearly expressed its intention that §§ 17–309(A)(1) and—309(A)(17), by contrast, are strict liability offenses.

## CONCLUSION

¶ 27 Accordingly, we vacate the superior court's order that A.R.S. §§ 17–309(A)(1) and—309(A)(17) include a required mental state, and remand to the superior court for further proceedings consistent with this opinion.

CONCURRING: PATRICIA A. OROZCO, Presiding Judge and DIANE M. JOHNSEN, Judge.