IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee*,

*v.*

JAMES HAMBERLIN,
*Appellant*.

No. 2 CA-CR 2021-0025
Filed July 11, 2022

---

Appeal from the Superior Court in Pinal County
No. S1100CR202002610
The Honorable Patrick K. Gard, Judge

**APPEAL DISMISSED**

---

COUNSEL

Kent P. Volkmer, Pinal County Attorney
By Thomas C. McDermott, Bureau Chief – Criminal Appeals, Florence
*Counsel for Appellee*

Baker & Baker, Phoenix
By Thomas M. Baker
*Counsel for Appellant*

---

**OPINION**

Vice Chief Judge Staring authored the opinion of the Court, in which Presiding Judge Eppich and Judge Brearcliffe concurred.

---

S T A R I N G, Vice Chief Judge:

¶1 The Apache Junction Justice Court convicted James Hamberlin of five violations of Arizona Administrative Code R12-4-319(B),[1] prohibiting locating wildlife from or with the aid of an aircraft during a hunt in an open big game season, as prohibited under A.R.S. § 17-309(A)(1). The court did so after denying his pretrial motion for a finding that R12-4-319(B) required specific intent and his alternative motion for dismissal on overbreadth and vagueness grounds. On appeal, the superior court affirmed the convictions, concluding that a violation of R12-4-319(B) is a strict liability offense not requiring proof of a culpable mental state and that the rule is neither vague nor overbroad. Hamberlin now appeals to this court. Because we conclude R12-4-319(B) is not a strict liability offense, we lack jurisdiction to grant relief and therefore dismiss Hamberlin's appeal.

**Factual and Procedural Background**

¶2 In 2018, the state charged Hamberlin with eleven class two misdemeanor violations of § 17-309(A)(1), which provides that "it is unlawful for a person to . . . [v]iolate . . . any rule adopted pursuant to [Title 17]." Seven of these charges alleged Hamberlin had violated R12-4-319(B) based on flights he made using a powered parachute between September and November 2017.[2] R12-4-319, entitled "Use of Aircraft to Take Wildlife," provides, in relevant part, that "a person shall not locate or assist in locating wildlife from or with the aid of an aircraft . . . in a hunt unit with an open big game season," defining "locate" as "any act or activity that does not take or harass wildlife and is directed at locating or finding wildlife in a hunt area." R12-4-319(B), (E). Hamberlin filed a motion asking the trial court to find that R12-4-319 "requires the specific intent to fly with the intent

---

[1] R12-4-319(B), formerly R12-4-319(C), was renumbered in 2019. 25 Ariz. Admin. Reg. 1047, 1109 (2019). However, because none of the substantive changes are relevant to this appeal, we cite the current version of the rule. Likewise, absent material revisions after the relevant dates, statutes and rules cited refer to the current versions unless otherwise indicated.

[2] The state also charged Hamberlin with four violations of R12-4-319(D), now R12-4-319(C). 25 Ariz. Admin. Reg. 1047, 1109. Before trial, on the state's motion, the court dismissed two of these charges. Hamberlin was subsequently acquitted of the remaining two counts charged under this subsection.

to locate wildlife."  Alternatively, he moved for dismissal, arguing the rule is unconstitutionally vague and overbroad.

¶3        At the hearing on Hamberlin's motion, the following exchange occurred:

> [DEFENSE COUNSEL]:  . . . I didn't hear the State argue there wasn't . . . an imputed *Mens rea* under R 12-4-319[E] directed at locating wildlife.  Does it require the State to prove that a flight was directed at locating wildlife?  Now they want to throw out like you just commented, you know you got all this evidence . . . but if it's strict liability none of that's necessary but they seem to believe it is necessary and that's because under . . . R 12-4-319[E] the flight has to be directed at locating wildlife for the purpose of taking wildlife not recreational flying.   The agency made it themselves in their public comments.   This administrative rule is not aimed or to prohibit recreational flying even if there's a hunt going on on the ground.  They made that clear.
>
> THE COURT:  Okay I've made my ruling.
>
> [DEFENSE COUNSEL]:  The ruling that there's no *Mens rea* required?
>
> THE COURT:   Well the statute says strict liability okay.  That's my determination.
>
> [DEFENSE COUNSEL]:  And just to clarify so we know what the trial's going to be about.  What would the State have to prove if there's no *Mens rea*?
>
> THE COURT:   Well the State has indicated they're going to prove beyond mere strict liability.  They're going to produce evidence beyond the fact that he just flew over the area.  You're saying that it could be for recreational purpose.  My point is the State has indicated

they're going to prove it was well beyond that
and your defense is going to be what, that it was
just for recreational purposes?

[DEFENSE COUNSEL]: But you're saying there
is no defense for recreational purposes that
there's no *Mens rea*. And yes that is important
to know what we need to show where the
defense is. If you're saying that recreational
flying that happens to locate wildlife is an
offense we certainly need to know that before
trial.

¶4        In response, the state argued its theory of the case was that
Hamberlin had been involved in "an on-going common scheme plan that
the State will prove beyond a reasonable doubt." It continued, "Having
established that, each one of the violations is strict liability because he's up
in the air and the circumstantial evidence if not direct evidence will show
that he's continuing to provide that scouting location and information to a
person who he knows to be a licensed guide."

¶5        Relying on *State v. Slayton*, 214 Ariz. 511 (App. 2007), the trial
court denied Hamberlin's motion, concluding:

[T]he Court [of Appeals] and *Slayton* has
already made its decision, but they've cited the
statute that they were going to—they cited Rule
12-4-319 which says what the activity is that
they have to prove. So I guess I'm not
appreciating your argument. I've made my
ruling I believe that *Slayton* says it's a strict
liability offense but I do believe it's still under
the rule, this is what they have to establish and
they can present this evidence.

It also rejected Hamberlin's arguments regarding vagueness and
overbreadth and subsequently denied his motion for reconsideration.
Following a bench trial, Hamberlin was convicted of five of the seven
counts involving R12-4-319(B) and ordered to pay a fine of $2,500.

¶6        On appeal before the superior court, Hamberlin reasserted his
arguments, and the court, citing *Slayton*, concluded the trial court had not
erred in finding that offenses charged under § 17-309(A)(1) are strict

liability offenses. Further, it determined, based on the regulatory nature of R12-4-319 and § 17-309(A)(1) and "the penalty attached to the misdemeanor offenses," as well as "the plain meaning of the language used in A.A.C. R12-4-[3]19," which "does not explicitly state a mens rea for the crime," the trial court had not erred in ruling that R12-4-319 is a strict liability offense. In concluding the evidence was sufficient to support Hamberlin's convictions, the court stated:

> [T]he trial court . . . previously ruled that the offenses were strict liability offenses, and therefore, the State was not required to show that [Hamberlin] intended to locate wildlife with or without the intent to take such wildlife. The State was required to show that [he] merely engaged in such conduct. The Court will note that there was some evidence presented at trial that [Hamberlin] intended to engage in such conduct, but the State did not need to prove the higher standard of intentionally since the offenses were merely strict liability.

The court also rejected Hamberlin's contention that R12-4-319 is vague and overbroad, concluding the "plain language of the statute clearly defines the conduct that is illegal."

¶7 Hamberlin now appeals to this court, asserting that, based on the plain language of the administrative rule, evidence of legislative intent, and "rules of statutory interpretation," the trial court erred "in holding that A.R.S. § 17-309(A)(1) and AAC R12-4-319 are strict liability offenses" not requiring "proof that [he] flew an aircraft with the intent to locate wildlife over a hunt unit with a big game hunt in progress." (Emphasis omitted.) Further, he argues, if we determine the administrative rule is a strict liability offense, "then it is clearly both vague and overbroad since it would encompass recreational flyers who have nothing to do with hunting," and the "Rule of Lenity requires [us] to resolve any ambiguity" in his favor. Finally, he contends "the State failed to produce any evidence that [he] flew his powered para-plane with the intent to locate wildlife with or without the intent to take such wildlife," and therefore the trial court erred in finding him guilty of violating R12-4-319, and the superior court erred in affirming the trial court's rulings.

## Jurisdiction

¶8          A criminal defendant "may appeal as prescribed by law and in the manner provided by the rules of criminal procedure."  A.R.S. § 13-4031.  When, as here, a case arising in a justice court is then appealed to the superior court, our jurisdiction is limited by A.R.S. § 22-375, which provides:

> A. An appeal may be taken by the defendant, this state or any of its political subdivisions from a final judgment of the superior court in an action appealed from a justice of the peace or municipal court, if the action involves the validity of a tax, impost, assessment, toll, municipal fine or statute.
>
> B.  Except as provided in this section, there shall be no appeal from the judgment of the superior court given in an action appealed from a justice of the peace or a municipal court.

Further, in *State v. Okken*, this court acknowledged that, under these circumstances, "[o]ur jurisdiction is limited . . . to the question of [a] statute's *facial* constitutionality."  238 Ariz. 566, ¶ 8 (App. 2015).  "If the statute is facially constitutional our inquiry is at an end, as we are without jurisdiction to review any alleged unconstitutional application of the statute." *State v. Yabe*, 114 Ariz. 89, 90 (App. 1977).

¶9          Here, the state contends that, "[w]ith the exception of [Hamberlin]'s claim that A.R.S. § 17-309(A)(1) and A.A.C. R12-4-319 are unconstitutionally vague and overbroad, the remaining claims constitute various as applied challenges to the statute or to the findings of the trial court or the reviewing superior court," and therefore they fall outside of our jurisdiction "on review of [a] direct appeal of a superior court's review of a matter that originated in a justice court, as limited by A.R.S. § 22-375." Specifically, it argues we lack jurisdiction over Hamberlin's argument that the trial and superior courts should have read the statute and administrative rule to impose a culpable mental state because it is "not a direct attack on the face of the statute itself" and instead "challenge[s] . . . the . . . courts' interpretations of the statute and . . . rule at issue." Similarly, the state contends Hamberlin's arguments regarding application of the rule of lenity and sufficiency of the evidence are also outside of our jurisdiction.

**¶10** We agree that we lack jurisdiction to consider Hamberlin's argument that the state failed to present sufficient evidence establishing his "flights were directed at locating wildlife." *See* § 22-375; *City of Tucson v. Grezaffi*, 200 Ariz. 130, ¶¶ 3-4 (App. 2001). However, although we generally lack appellate jurisdiction over challenges to lower courts' interpretations of statutes and rules under § 22-375, *see State v. Renteria*, 126 Ariz. 591, 592-93 (App. 1979), in order to reach Hamberlin's claim that R12-4-319 is vague and overbroad—a facial challenge to the rule's validity over which we have jurisdiction pursuant to § 22-375(A)—we must first determine whether the administrative rule, together with § 17-309(A)(1), creates a strict liability offense.

## Discussion

**¶11** As noted, we first address Hamberlin's argument that the trial court erred in holding that a violation of R12-4-319(B) as charged under § 17-309(A)(1) is a strict liability offense. We review de novo the lower courts' interpretation of § 17-309(A)(1) and R12-4-319. *See Guminski v. Ariz. State Veterinary Med. Examining Bd.*, 201 Ariz. 180, ¶ 10 (App. 2001) (interpretation of statutes and administrative rules is an issue of law).

**¶12** Hamberlin was convicted under § 17-309(A)(1), which provides, "Unless otherwise prescribed by this title, it is unlawful for a person to . . . [v]iolate any provision of this title or any rule adopted pursuant to this title." *See also* § 17-309(B) ("[A] person who violates any provision of this title, or who violates or fails to comply with a lawful order or rule of the commission, is guilty of a class 2 misdemeanor."). His convictions under this statute were based on violations of R12-4-319(B), which was adopted pursuant to Title 17 of the Arizona Revised Statutes, *see* A.R.S. § 17-231(A)(1), and provides, in relevant part, that "a person shall not locate or assist in locating wildlife from or with the aid of an aircraft . . . in a hunt unit with an open big game season." For purposes of this section of the administrative code, "'locate' means any act or activity that does not take or harass wildlife and is directed at locating or finding wildlife in a hunt area." R12-4-319(E).

**¶13** Hamberlin argues, as he did in both the trial and superior courts, that a violation of R12-4-319(B) is not a strict liability offense because "the specific wording of the administrative rule applies only to persons flying with the intent to locate wildlife," and therefore, the state was required to prove he had such an intent in order to obtain a criminal conviction against him under § 17-309(A)(1) for his alleged violation of this rule. Further, he asserts "[f]lying with the intent to locate wildlife is not

synonymous with incidental viewing of wildlife while flying an aircraft," and it "cannot be illegal for pilots and passengers to look down at the ground while flying or for them to happen to see wildlife."

¶14        In support of his argument, Hamberlin asserts "the administrative agency itself stated that the rule does not apply to recreational flyers," pointing to the Arizona Game and Fish Commission's public statements from the rulemaking process. In response to concerns about the ability of Arizona Game and Fish Department personnel to differentiate between recreational flyers and those hunting or locating game, the Commission explained, "The agency believes that it can adequately enforce the rule and differentiate between recreational flyers and those scouting game. The rule is not intended to prohibit recreational flying that does not negatively impact wildlife." 6 Ariz. Admin. Reg. 226 (2000). Hamberlin also highlights testimony at an evidentiary hearing before the Maricopa County Superior Court in which a Game and Fish Department officer stated that if Hamberlin is "just flying to view the scenery and he's not locating wildlife, that would not be a violation. If he is locating wildlife when there is an open big game hunt in that unit, that is a violation." Thus, he concludes "the Department clearly exempted recreational flying and limited the rule[']s application to hunting and the locating of animals for hunting."

¶15        Additionally, Hamberlin contends *Slayton*, the case upon which both lower courts and the state relied, is distinguishable in that it dealt only with violations of A.A.C. R12-4-302(G), now R12-4-302(D)(2), *see* 19 Ariz. Admin. Reg. 867 (2013), which prohibited hunting outside of an authorized unit, and § 17-309(A)(17), now § 17-309(A)(16), *see* 2012 Ariz. Sess. Laws, ch. 128, § 2, which prohibits the possession or transportation of unlawfully taken wildlife, rather than the administrative rule at issue in this case. Moreover, he argues the *Slayton* court's reference to § 17-309(A)(1) as a strict liability offense is "in[]artfully worded" because the statute "does not state a substantive offense but merely incorporates the Administrative Rules into the statutory scheme which includes criminal penalties" and "is always paired with an[] administrative rule when a violation of [that] rule is alleged." In other words, he asserts "the *Slayton* court's inclusion of A.R.S. § 17-309(A)(1) in its opinion . . . defined all Title 17 and AAC R-12-4-101 et. seq. as strict liability offenses despite Title 17 having at least eleven (11) statutes that include specific mental states" that "could be incorporated under" § 17-309(A)(1). Thus, Hamberlin concludes, the lower courts incorrectly interpreted *Slayton*'s holding to mean that any violation of the

administrative code charged under § 17-309(A)(1) "must be a strict liability offense."

¶16          Because the state contends we lack jurisdiction to address Hamberlin's argument that R12-4-319(B) requires proof of a culpable mental state, it argues in its answering brief only that the trial and superior courts' interpretations of the statute and rule at issue "were properly guided by" *Slayton*'s holding that "the legislature has specified requisite mental states where it wanted them and clearly expressed its intention that §[] 17-309(A)(1)" is a "strict liability offense[]." Below, the state argued *Slayton*'s "holding could not be any more clear or unequivocal and it is inescapably on point here because all counts charge [Hamberlin] with violations of A.R.S. § 17-309(A)(1)," and "[t]he Court of Appeals has already construed the language and legislative history of [this statute] for the benefit of the trial court and the court is bound by its holding . . . that offenses under A.R.S. § 17-309(A)(1) are undoubtedly strict liability offenses." Further, it argued that although "the phrase 'directed at' in the definition of 'locate' under A.A.C. R-12-4-319([E]) implies some deliberate activity on the actor's part, perhaps with some specific purpose, the same can be said [of] almost any strict liability offense." It continued, "For example, misdemeanor driving under the influence is a strict liability offense that clearly requires deliberative action on the offender's part, but does not require the State to prove that the offender knew he was under the influence or any *mens rea* at all." Thus, although the state acknowledges it had an "evidentiary burden to prove that [Hamberlin]'s flights were indeed 'directed at locating or finding wildlife,'" it appears to contend such proof does not involve a culpable mental state.

¶17          "If a statute defining an offense does not expressly prescribe a culpable mental state that is sufficient for commission of the offense, no culpable mental state is required for the commission of such offense, and the offense is one of strict liability unless the proscribed conduct necessarily involves a culpable mental state." A.R.S. § 13-202(B); *see also* A.R.S. § 13-102(D) (unless otherwise provided or required, "provisions of this title shall govern the construction of and punishment for any offense defined outside this title"). However, an offense is one of strict liability only when the legislature clearly intends not to require a specific mental state. *Phx. City Prosecutor's Off. v. Nyquist*, 243 Ariz. 227, ¶ 7 (App. 2017); *see also State v. Williams*, 144 Ariz. 487, 488 (1985) ("The requirement that in a criminal case the State demonstrate some degree of wrongful intent is the rule rather than the exception."). "When a statute fails to specify a mental state, but the proscribed conduct impliedly requires one, the appropriate mental state

may be implied." *Slayton*, 214 Ariz. 511, ¶ 12. To "resolve whether the offenses charged require a particular mental state, we must ascertain the legislature's intent in enacting them." *Id.* ¶ 13. This involves first looking to the statute's plain language, then to its context and history, and finally considering whether the offense is one that historically imposed strict liability. *Id.*; *see Kimble v. City of Page*, 199 Ariz. 562, ¶ 19 (App. 2001) ("principles of construction that apply to statutes also apply to administrative rules and regulations").

¶18 Looking to the plain language of R12-4-319, although this rule lacks an express reference to one of the four culpable mental states defined under A.R.S. § 13-105(10) — "intentionally," "knowingly," "recklessly," and "criminal negligence" — the proscribed conduct "necessarily involves a culpable mental state" in that it requires an individual's activities to be "directed at locating or finding wildlife in a hunt area."[3] § 13-202(B); R12-4-319(B), (E); *see also Nicaise v. Sundaram*, 245 Ariz. 566, ¶ 11 (2019) ("A cardinal principle of statutory interpretation is to give meaning, if possible, to every word and provision so that no word or provision is rendered superfluous."). In the context of R12-4-319, we do not believe an individual can "direct" their activities at "locating or finding wildlife" absent an element of intent. Indeed, as Hamberlin points out, "[i]t is this '. . . intent to locate wildlife' that differentiates innocent recreational flying from flying in violation of the administrative rule/statute." Were we to interpret R12-4-319(B) as not requiring proof of any culpable mental state, as Hamberlin argues, recreational flyers who happened to see wildlife while flying could be charged with violating this rule, a result we do not believe the Game and Fish Commission intended in light of its statement that R12-4-319 "is not intended to prohibit recreational flying that does not negatively impact wildlife" and can be enforced by differentiating "between recreational flyers and those scouting game." 6 Ariz. Admin. Reg. 226; *see Ariz. Health Care Cost Containment Sys. v. Bentley*, 187 Ariz. 229, 233 (App. 1996) ("Statutes must be given a sensible construction that accomplishes the legislative intent and which avoids absurd results.").

¶19 To the extent the state asserts *Slayton* holds that all violations of the administrative code charged pursuant to § 17-309(A)(1) are strict

---

[3]We do not suggest the state is required to establish a defendant had a culpable mental state with regard to whether his activities were taking place "in a hunt unit with an open big game season" in order to prove a violation of R12-4-319(B) charged pursuant to § 17-309(A)(1).

liability offenses regardless of the language contained within the applicable code provision, we disagree. In determining whether a violation of R12-4-302(G), as prohibited under § 17-309(A)(1), requires proof of a particular mental state, the *Slayton* court looked to the plain language of both § 17-309(A)(1), which "merely specifies that it is 'unlawful for a person to . . . [v]iolate . . . any rule adopted pursuant to this title,'" and R12-4-302(G), which at that time provided that "[a]n individual shall use a tag [permit] only in the season and hunt area for which the tag [permit] is valid." 214 Ariz. 511, ¶ 14 (alterations in *Slayton*) (quoting § 17-309(A)(1)); 12 Ariz. Admin. Reg. 683, 685 (2006). The court concluded:

> [P]ursuant to the plain terms of § 17-309(A)(1), **to establish a violation of this particular rule**, the State must show merely that the alleged offender was hunting either out of season or outside the designated hunting area. There is nothing in the conduct proscribed by the statute, or the rule, that "necessarily involves a culpable mental state" by requiring that the hunter know that he is hunting out of his designated hunting area.

*Slayton*, 214 Ariz. 511, ¶ 14 (emphasis added). Thus, although we agree that § 17-309(A)(1) does not by its plain language "require that the offender have any particular mental state to violate" it, *id.*, we cannot say the same of the specific administrative code provision at issue in this case. Moreover, there are additional code provisions adopted under Title 17 that expressly or impliedly reference culpable mental states. *See, e.g.*, A.A.C. R12-4-303(A)(4)(d) ("A person shall not . . . [p]lace any substance in a manner intended to attract bears."); R12-4-303(A)(5) ("A person shall not place, maintain, or use a trail camera, or images, video . . . for the purpose of taking or aiding in the take of wildlife . . . ."); R12-4-303(A)(7)(b) ("The use of edible or ingestible substances to aid in taking big game is unlawful when . . . [a] person knowingly takes big game with the aid of edible or ingestible substances placed for the purpose of attracting wildlife to a specific location.").

**¶20** Because we conclude R12-4-319(B) necessarily involves a culpable mental state, we do not reach Hamberlin's challenge to the constitutionality of the statute and rule or his related argument regarding

the rule of lenity. As such, we lack jurisdiction to grant relief. *See* § 22-375; *Okken*, 238 Ariz. 566, ¶ 8.[4]

## Disposition

**¶21**  For the foregoing reasons, because we conclude a violation of R12-4-319(B) charged pursuant to § 17-309(A)(1) necessarily involves proof of a culpable mental state, we dismiss Hamberlin's appeal for lack of jurisdiction.

---

[4]We initially disposed of this appeal in a memorandum decision, including declining to *sua sponte* exercise special action jurisdiction. *See State v. Perez*, 172 Ariz. 290, 292-93 (App. 1992) (discretion to consider matter as special action). Hamberlin filed a motion for reconsideration, requesting that we replace the memorandum decision with a published opinion and that we exercise special action jurisdiction in order to reverse Hamberlin's convictions. In a separate order, we are granting the motion insofar as it requests publication and denying the request that we exercise special action jurisdiction.